**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Roscoe R. BEATY, Defendant–Appellant.**

**No. 97–6007.**

United States Court of Appeals,
Sixth Circuit.

Argued April 22, 1998.

Decided July 1, 1998.

Rehearing and Suggestion for Rehearing
En Banc Denied Aug. 13, 1998.

Peter J. Strianse (argued and briefed), Tune, Entrekin & White, Nashville, TN, for Defendant–Appellant.

William Cohen, Asst. U.S. Attorney (argued and briefed), Office of the U.S. Attorney, Nashville, TN, for Plaintiff–Appellee.

Before: KENNEDY and BATCHELDER, Circuit Judges; HULL, District Judge.*

## OPINION

KENNEDY, Circuit Judge.

Defendant Roscoe R. Beaty was indicted for illegal gambling, in violation of 18 U.S.C. § 1955 and § 2, and conspiracy to commit illegal gambling, in violation of 18 U.S.C. § 371. He was tried on the charges, but the court declared a mistrial and eventually scheduled the case for retrial. Beaty subsequently filed a motion to dismiss the indictment on double jeopardy grounds, which the District Court denied. Beaty now appeals the denial of the motion to dismiss the indictment.

## I. FACTS

In 1975, Defendant Roscoe R. Beaty registered with the Internal Revenue Service ("IRS") as a wagerer and began paying occupational and wagering taxes pursuant to 26 U.S.C. §§ 4401, 4411.[1] Beaty annually pur-

---

\* The Honorable Thomas Gray Hull, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1. Section 4401 provides:

 **Imposition of tax**

 (a) **Wagers.—**

 (1) **State authorized wagers.—** There shall be imposed on any wager authorized under the law of the State in which accepted an excise tax equal to 0.25 percent of the amount of such wager.

 (2) **Unauthorized wagers.—** There shall be imposed on any wager not described in paragraph (1) an excise tax equal to 2 percent of the amount of such wager.

 (b) **Amount of wager.—** In determining the amount of any wager for the purposes of this subchapter, all charges incident to the placing of such wager shall be included; except that if the taxpayer establishes, in accordance with regulations prescribed by the Secretary, that an amount equal to the tax imposed by this subchapter has been collected as a separate charge from the person placing such wager, the amount so collected shall be excluded.

 (c) **Persons liable for tax.—** Each person who is engaged in the business of accepting wagers shall be liable for and shall pay the tax under this subchapter on all wagers placed with him. Each person who conducts any wagering pool or lottery shall be liable for and shall pay the tax under this subchapter on all wagers placed in such pool or lottery. Any person required to register under section 4412 who receives wagers for or on behalf of another person without having registered under section 4412

chased a "gambling stamp" in the amount of $500 (the occupational tax). In addition, Beaty filed monthly wagering returns (the wagering tax). Between 1975 and 1993, Beaty paid occupational and wagering taxes exceeding $83,690.

On August 23, 1995, the government filed a superseding indictment charging Beaty with operating an illegal gambling business, in violation of 18 U.S.C. § 1955 and 18 U.S.C. § 2, and conspiracy, in violation of 18 U.S.C. § 371.

Beaty's jury trial began on November 5, 1996 but ended in a mistrial on November 15, 1996 because the jury was unable to reach a verdict. The District Court scheduled a retrial for August 12, 1997.

On May 15, 1997, Beaty filed a motion to dismiss the superseding indictment on double jeopardy grounds. The District Court denied the motion in a memorandum opinion filed on August 6, 1997. On appeal, Beaty challenges the denial of the motion.

## II. DISCUSSION

█ The District Court's decision to deny the motion to dismiss on grounds of double jeopardy is a conclusion of law which we review *de novo*. *United States v. Ursery*, 59 F.3d 568, 570 (6th Cir.1995), *rev'd on other grounds*, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 ("This court reviews *de novo* the constitutional issue of double jeopardy.").

The Double Jeopardy Clause of the Fifth Amendment provides that "[n]o person shall ... be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. ·amend V. This Clause prohibits "a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." *Department of*

*Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 1941 n. 1, 128 L.Ed.2d 767 (1994). It has long been understood, however, that this Clause "does not prohibit the imposition of any additional sanction that could, 'in common parlance,' be described as punishment. The Clause protects only against the imposition of multiple *criminal punishments* for the same offense and then only when such occurs in successive proceedings." *Hudson v. United States*, —— U.S. ——, ——, 118 S.Ct. 488, 493, 139 L.Ed.2d 450 (1997) (emphasis added) (internal citations omitted).

█ In this case, Beaty contends that the gambling and occupational taxes he paid annually constituted "criminal punishment" that "subject[ed him] to 'jeopardy' within the constitutional meaning" of that term. *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 548–49, 63 S.Ct. 379, 87 L.Ed. 443 (1943). Therefore, Beaty argues, his subsequent indictment for accepting illegal wagers violates the Fifth Amendment.

█ Under certain circumstances, a civil penalty may constitute "punishment" for the purpose of double jeopardy analysis. *United States v. Halper*, 490 U.S. 435, 436, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). The Supreme Court has articulated the following analytical framework for determining whether a penalty, such as the occupational or wagering tax, is a form of "punishment":

Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. A court first must ask whether the legislature "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one or the other." Even in those cases where the legislature "has indicated an intention to establish a civil penalty, we

---

the name and place of residence of such other person shall be liable for and shall pay the tax under this subchapter on all such wagers received by him.

Section 4411 provides:

**Imposition of tax**

(a) **In general.**— There shall be imposed a *special tax of $500 per year* to be paid by each person who is liable for the tax imposed under section 4401 or who is engaged in receiving wagers for or on behalf of any person so liable.

(b) **Authorized persons.**— Subsection (a) shall be applied by substituting "$50" for "$500" in the case of—

(1) any person whose liability for tax under section 4401 is determined only under paragraph (1) of section 4401(a), and

(2) any person who is engaged in receiving wagers only for or on behalf of person described in paragraph (1).

have inquired further whether the statutory scheme was so punitive either in purpose or effect" as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty."

In making this latter determination, the factors listed in *Kennedy v. Mendoza–Martinez* provide useful guideposts, including: (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment-retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned." It is important to note, however, that "these factors must be considered in relation to the statute on its face and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty."

*Hudson,* — U.S. at —, 118 S.Ct. at 493 (internal citations omitted).

 Applying these double jeopardy principles to the facts of this case, it becomes evident that criminally prosecuting Beaty would not violate the Double Jeopardy Clause. It is clear that Congress intended the occupational and wagering taxes to be civil in nature. Taxes, on their face, do not constitute criminal punishment. *See Kurth Ranch,* 114 S.Ct. at 1946. Thus, we must consider the factors endorsed in *Hudson* to determine whether these particular taxes constitute such a penalty. *Hudson,* — U.S. at —, 118 S.Ct. at 493; *Kurth Ranch,* 114 S.Ct. at 1946 (noting that "at some point, an exaction labeled as a tax approaches punishment," and the court's task is to determine whether a particular tax has crossed that line).

Consideration of these factors reveals little evidence, let alone the requisite clearest proof, that the taxes are "so punitive in form and effect as to render them criminal despite Congress' intent to the contrary." *Ursery,* 116 S.Ct. at 2148. First, taxes historically have not been viewed as punishment. *See Kurth Ranch,* 114 S.Ct. at 1946 ("Whereas fines, penalties, and forfeitures are readily characterized as sanctions, taxes are typically different because they are usually motivated by revenue-raising, rather than punitive, purposes."). *Cf. Hudson,* — U.S. at —, 118 S.Ct. at 495 (noting that money penalties historically not considered punishment). Second, the taxes imposed do not constitute an "affirmative disability or restraint," as that term is ordinarily understood. *Hudson,* — U.S. at —, 118 S.Ct. at 496. The imposition of taxes is "certainly nothing approaching the 'infamous punishment' of imprisonment." *Id.* quoting *Flemming v. Nestor,* 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).

Third, the conduct for which the taxes were imposed may also be criminal.[2] However, the gambling and occupational taxes are not conditioned on the commission of a crime; they are imposed on all wagers, legal and illegal. Moreover, the Government imposes the taxes on all wagers, irrespective of whether the wagerer has been arrested. *Cf. Kurth Ranch,* 114 S.Ct. at 1947–48 (finding that Montana's drug tax "departs so far from normal revenue laws as to become a form of punishment." The features of the tax which led the Court to this conclusion included the facts that the tax was conditioned on the commission of a crime, the tax was enacted only after the taxpayer had been arrested for the same conduct that formed the basis of the tax obligation, and persons who were arrested for possessing drugs constituted the entire class of taxpayers subject to the tax.). Even in the absence of these mitigating features, the fact that the taxed conduct may also be criminal would be insufficient to render the tax criminally punitive, particularly in the double jeopardy context. *See Hudson,* — U.S. at —, 118 S.Ct. at 496; *Ursery,* 116 S.Ct. at 2149; *Kurth Ranch,* 114 S.Ct. at 1945 ("As a general matter, the unlawfulness of an activity does not prevent its taxation."); *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993) (re-

---

**2.** Indeed, it formed the basis for Beaty's indictment.

jecting "same-conduct" test for double jeopardy purposes).

Fourth, the gambling and occupational taxes can be characterized as mixed motive taxes: motivated by both a desire to raise revenue, and to deter illegal gambling. *United States v. Kahriger*, 345 U.S. 22, 73 S.Ct. 510, 513, 97 L.Ed. 754 (1953), *rev'd on other grounds, Marchetti v. U.S.*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). "But the mere presence of [a deterrent] purpose is insufficient to render a sanction criminal, as deterrence 'may serve civil as well as criminal goals.' " *Hudson*, —— U.S. at ——, 118 S.Ct. at 494 (noting also that "all civil penalties have some deterrent effect"); *see also Ursery*, 116 S.Ct. at 2138; *Kurth Ranch*, 114 S.Ct. at 1946 (cautioning "against invalidating a tax simply because its enforcement might be oppressive or because the legislature's motive was somehow suspect").

Finally, the taxes were not excessive in relation to their revenue-building purpose. The gambling tax here was imposed at a rate of two percent of gross wagers. This Court has held that much greater taxes and penalties do not amount to punishment for double jeopardy purposes. *See, e.g., United States v. Martin*, 95 F.3d 406 (6th Cir.1996) (finding over-quota marketing penalty of seventy-five percent does not amount to punishment); *United States v. Alt*, 83 F.3d 779 (6th Cir. 1996) (holding civil fraud penalty averaging eighty-one cents for each dollar of tax owed does not constitute punishment); *Yarborough v. United States*, 955 F.Supp. 727, 730 (S.D.Tx.1996) (finding ten percent tax on wagering is not sufficiently high to constitute a penalty).

In sum, there is very little evidence, let alone the "clearest proof," that the occupational and wagering taxes constitute criminal punishment. The Double Jeopardy Clause therefore poses no obstacle to the trial on the pending indictment.

### III. CONCLUSION

For all of the foregoing reasons, the decision of the District Court is **AFFIRMED.**