Thomas J. HERBERT (97–4287); Nicole R. Green; Thomas G. Morgan; Thomas L. Magelaner; Denise Nibert; George H. Grosser; John T. Weber; Allison M. Byrne–Nucerino; Jack C. Butler; Orlando Wilborn (97–4288), Petitioners–Appellants,

v.

Gerry BILLY, Licking County Sheriff, et al. (97–4287); James A. Karnes, Franklin County Sheriff; Al Myers, Delaware County Sheriff (97–4288), Respondents–Appellees.

Nos. 97–4287, 97–4288.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 7, 1998.

Decided Nov. 20, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 21, 1999.

Samuel H. Shamansky (argued), Cassidy & Meeks, Columbus, Ohio, for Petitioner–Appellant in No. 97–4287.

R. William Meeks (briefed), Samuel H. Shamansky (argued and briefed), Cassidy & Meeks, Columbus, Ohio, for Petitioners–Appellants in No. 97–4288.

Steven L. Taylor (argued and briefed), Prosecuting Attorney's Office for the County of Franklin, Columbus, Ohio, David Q. Wigginton, Office of the County Prosecutor, Newark, Ohio, Donald G. Keyers, Asst. Attorney Gen., Office of the Attorney General, Corrections Litigation Section, Columbus, Ohio, for Respondent–Appellees in No. 97–4287.

Steven L. Taylor (argued and briefed), Prosecuting Attorney's Office for the County of Franklin, Columbus, Ohio, Donald G. Keyer, Asst. Attorney Gen., Office of the Attorney General, Corrections Litigation Section, Columbus, Ohio, for Respondent–Appellee Karnes in No. 97–4288.

Steven L. Taylor (argued and briefed), Prosecuting Attorney's Office for the County of Franklin, Columbus, Ohio, William Duncan Whitney, Dane A. Gaschen (briefed), Delaware County Prosecuting Attorney's Office, Delaware, Ohio, for Respondent–Appellee Myers in No. 97–4288.

Before: NELSON and NORRIS, Circuit Judges; GWIN,[*] District Judge.

GWIN, District Judge.

In this appeal, Appellants Thomas J. Herbert, Nicole R. Green, Thomas G. Morgan, Thomas L. Magelaner, Denise Nibert, George H. Grosser, John T. Weber, Allison M. Byrne–Nucerino, Jack C. Butler, and Orlando Wilborn appeal from the Judgment of the district court denying their petition for habeas corpus relief pursuant to 28 U.S.C. § 2254(d)(1). In their petition, appellants claim that the Double Jeopardy provision of the Fifth Amendment to the U.S. Constitution prevents a criminal conviction of driving under the influence of alcohol when Ohio had earlier suspended their drivers' licenses under the Administrative License Suspension provisions of Ohio Rev.Code § 4511.191(D). Because we find that the Ohio Administrative License Suspension provision of Ohio Rev. Code § 4511.191(D) is not punishment and because we find that decisions of the Ohio courts in their cases were neither contrary to, nor an unreasonable application of, clearly established Double Jeopardy law as determined by the United States Supreme Court, we AFFIRM the judgment of the district court.

I.

Petitioners brought this action for habeas relief under 28 U.S.C. § 2254(d)(1). Petitioners argue that a criminal conviction after an earlier administrative license suspension violates their rights under the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution.

The petitioners' claims arise out of procedures following their being stopped for operating a motor vehicle while under the influence of alcohol ("OMVI"). After law enforcement officers stopped each petitioner, each submitted to a chemical test for breath-alcohol content. Each failed the test. After the petitioners failed the chemical test for breath-alcohol content, the arresting officers suspended each petitioner's driver's license pursuant to the Administrative License Suspension provisions of Ohio Rev.Code § 4511.191(D).

The law enforcement officers also charged each petitioner with an OMVI offense under Ohio Rev.Code § 4511.19.[1] Each petitioner was later found guilty of driving while under the influence of alcohol.

---

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

[1] Ohio Rev.Code § 4511.19(A)(3) makes it a criminal offense to operate a vehicle with "a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath."

Some petitioners were charged under a comparable municipal ordinance.

The petitioners appealed their convictions to the appropriate state appellate court.[2] Petitioners claimed that an OMVI conviction under Ohio Rev.Code § 4511.19(A)(3) was barred by the Double Jeopardy Clause because it followed an administrative license suspension under § 4511.191. The state appellate courts dismissed each appeal. The Ohio Supreme Court affirmed.[3]

Petitioners subsequently filed Petitions for Writs of Habeas Corpus with the United States District Court for the Southern District of Ohio. Upon agreement of the parties, the district court consolidated all cases except that of Petitioner Herbert. In opinions and orders dated September 25, 1997, and October 7, 1997, respectively, the court dismissed all of the habeas petitions. Each Petitioner filed a timely notice of appeal.

## II.

In 1993, the Ohio General Assembly enacted legislation directed to problems associated with drunk driving on Ohio highways.[4] *State v. Gustafson*, 76 Ohio St.3d 425, 431, 668 N.E.2d 435 (1996). In this legislation, the Ohio General Assembly revised Ohio's implied consent statute, Ohio Rev.Code § 4511.191. The revision authorized immediate "on-the-spot" suspensions of driving privileges at the time of an OMVI arrest. Ohio Rev.Code § 4511.191(D). The revision also required an arresting officer to carry out an administrative license suspension for motorists who either (1) refuse, upon the officer's request, to submit to a chemical test to detect blood, breath or urine alcohol content; or (2) take the test, but "fail" it, i.e., the driver registers a blood-, breath- or urine-alcohol content exceeding statutory limits.

*Id.* In making such a suspension, the arresting officer acts "[o]n behalf of the registrar" of the bureau of motor vehicles.

Sections 4511.191(E) and (F) establish the range of the administrative license suspension. Suspension ranges from ninety days (imposed upon a first offender who "fails" a chemical test) to five years (imposed upon an arrestee who refuses testing and who has refused chemical testing on three or more prior occasions in the preceding five years). *Gustafson*, 76 Ohio St.3d at 431, 668 N.E.2d 435.

The driver may appeal the suspension at an initial appearance before the criminal court hearing the criminal charge.[5] However, any appeal of an administrative license suspension does not, by itself, stay the suspension. Ohio Rev.Code § 4511.191(H).

After the period of suspension is over, the driver may request the Bureau of Motor Vehicles to return or reissue the suspended license. The Bureau returns the license upon payment of a $250 reinstatement fee and proof of compliance with Ohio's financial responsibility requirements. Ohio Rev.Code § 4511.191(L).

## III.

■ On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act, Pub.L. 104–132, 110 Stat. 1214 ("AEDPA"). The AEDPA requires heightened respect for state court factual and legal determinations. The AEDPA applies to all habeas cases filed after April 24, 1996.[6] *Lindh v. Murphy*, 521 U.S. 320, ——, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997) ("We hold that ... the new provisions of chapter 153 generally apply only to cases filed after the Act became effective."); *Harp-*

---

**2.** Petitioners Butler and Herbert appealed to the Ohio Court of Appeals, Fifth Appellate District. The remaining petitioners filed appeals with the Ohio Court of Appeals, Tenth Appellate District.

**3.** Several petitioners did not appeal to the Supreme Court of Ohio on the ground that such appeal would have been futile. 28 U.S.C. § 2254(b). As is clear from the cases that were pursued to the Ohio Supreme Court, the court undoubtedly would have dismissed the other appeals under *State v. Gustafson*, 76 Ohio St.3d 425, 668 N.E.2d 435 (1996). The state does not challenge any of the habeas petitions on the ground that available state remedies were not exhausted. In light of the circumstances, the exhaustion requirement of 28 U.S.C. § 2254(b) is

excused as to those petitioners who did not exhaust their state remedies.

**4.** *See* 144 Ohio Laws, Part I, 1566 (effective Sept. 1, 1993); 145 Ohio Laws Part I, 479 (effective Sept. 1, 1993).

**5.** The initial criminal appearance must occur within five days of arrest. Ohio Rev.Code § 4511.191(G).

**6.** Section 104 of the AEDPA modified 28 U.S.C. § 2254(d) as follows:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was

*ster v. Ohio,* 128 F.3d 322, 326 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998).

■ With the AEDPA, Congress limited the source of law for habeas relief to cases decided by the United States Supreme Court. Before a writ may issue under the AEDPA, the federal court must find that the state court's adjudication of the claim was "contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). This provision marks a significant change from the previous language by referring only to law determined by the Supreme Court. A district court or court of appeals no longer can look to lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. 17A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4261.1 (2d ed. Supp.1998).

Other circuit courts of appeal have examined the changed standard of review resulting from the AEDPA. In an *en banc* decision, the Seventh Circuit discussed § 2254(d) in *Lindh v. Murphy,* 96 F.3d 856 (7th Cir. 1996), *rev'd on other grounds,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The Seventh Circuit held that reasonable state court judgments are beyond the scope of federal review:

> Section 2254(d)(1) as we read it does no more than regulate relief. It tells federal courts: Hands off, unless the judgment in place is based on an error grave enough to be called "unreasonable."
>
> *      *      *      *      *      *
>
> adjudicated on the merits in State court proceedings unless the adjudication of the claim -
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
> 28 U.S.C. § 2254(d).
> Petitioners "submit that their convictions constituted unreasonable applications of established Supreme Court precedent." Thus their appeal arises solely under § 2254(d)(1).

For current purposes it is enough to say that when the constitutional question is a matter of degree, rather than of concrete entitlements, a "reasonable" decision by the state court must be honored. By posing the question whether the state court's treatment was "unreasonable," § 2254(d)(1) requires federal courts to take into account the care with which the state court considered the subject.

*      *      *      *      *      *

> The Supreme Court of the United States sets the bounds of what is "reasonable"; a state decision within those limits must be respected—not because it is right, or because federal courts must abandon their independent decision making, but because the grave remedy of upsetting a judgment entered by another judicial system after full litigation is reserved for grave occasions. That is the principle change effected by § 2254(d)(1).

*Id.* at 870–71.[7]

■ Under the AEDPA, the district court could find the state court determinations unreasonable "only when it can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect. In other words, we can grant habeas relief only if a state court decision is so clearly incorrect that it would not be debatable among reasonable jurists." *Drinkard v. Johnson,* 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997).[8]

7. In *Hennon v. Cooper,* 109 F.3d 330, 334–35 (7th Cir.1997), the Seventh Circuit further described this standard:
> [The] statute commands deference to the state court's judgment by using the word "unreasonable," which is stronger than "erroneous" and maybe stronger than "clearly erroneous." Thus the fact that we might disagree with the state court's determination . . .—might think the determination incorrect—would not carry the day for him.

8. In *Drinkard,* the Fifth Circuit applied the AEDPA standard to petitions pending on April 24, 1996, the effective date of the AEDPA. In *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997), the Court found that the

■ In applying this standard, this court reviews the district court's denial of habeas corpus relief *de novo. See, e.g., Harpster,* 128 F.3d at 325; *West v. Seabold,* 73 F.3d 81, 84 (6th Cir.), *cert. denied,* 518 U.S. 1027, 116 S.Ct. 2569, 135 L.Ed.2d 1086 (1996).

## IV.

■ The Double Jeopardy Clause of the Fifth Amendment to the Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." The Fifth Amendment applies to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794–95, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

■■ While the "primary evil" to be prevented by the Double Jeopardy Clause is successive prosecution, *Schiro v. Farley,* 510 U.S. 222, 230, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994), the Supreme Court has also construed the Clause to bar "successive punishments." *United States v. Ursery,* 518 U.S. 267, 273, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996); [9] *United States v. Dixon,* 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). The protection against multiple punishments prohibits the government from " 'punishing twice, or attempting a second time to punish criminally, for the same offense.' " *Witte v. United States,* 515 U.S. 389, 396, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) (quoting *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 82 L.Ed. 917 (1938)).

■ Civil proceedings do not place defendants in "jeopardy" within the accepted constitutional meaning of that term. *Breed v. Jones,* 421 U.S. 519, 528, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). Ordinarily, legislatures may impose both a civil and a criminal sanction for the same conduct. Such cumulative sanctions do not intrinsically violate the defendant's Double Jeopardy rights, *see Helvering,* 303 U.S. at 399, 58 S.Ct. 630, even when the civil sanction has some punitive

effect. *Ursery,* 518 U.S. at 284 n. 2, 116 S.Ct. 2135.

■ In a "rare case," a civil sanction may impose "punishment" sufficient to implicate the Double Jeopardy Clause's proscription against multiple punishments. *United States v. Halper,* 490 U.S. 435, 451, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989); *United States v. Beaty,* 147 F.3d 522, 524 (6th Cir.1998). ·

After the district court's dismissal of the petitions in the cases at the bar, the Supreme Court issued its decision in *Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). Like the case before us, *Hudson* presented a question of whether, after the administrative imposition of sanctions that the public might describe as "punishment," the Double Jeopardy Clause would bar criminal proceedings that stemmed from essentially the same conduct that had led to the administrative sanctions. *Id.* at —— ——, 118 S.Ct. at 491–93.

■ The *Hudson* decision clarified the standard federal courts must apply when deciding whether administrative sanctions rise to the level of criminal punishment, triggering the Double Jeopardy Clause. In *Hudson,* the Court repeated its longstanding recognition that "the Double Jeopardy Clause does not prohibit the imposition of any additional sanction that could, 'in common parlance,' be described as punishment." *Hudson,* at ——, 118 S.Ct. at 493 (quoting *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 549, 63 S.Ct. 379, 87 L.Ed. 443 (1943) (quoting *Moore v. Illinois,* 55 U.S. (14 How.) 13, 19, 14 L.Ed. 306 (1852))). The Clause "protects only against the imposition of multiple criminal punishments for the same offense." *Id.* (quoting *Helvering,* 303 U.S. at 399, 58 S.Ct. 630).[10]

■ In determining whether a sanction is punishment, a court must first ask whether the legislature, "in establishing the penaliz-

---

AEDPA applied only to petitions filed after that date, effectively overruling *Drinkard* on this point. *See Shute v. State of Texas,* 117 F.3d 233, 236 n. 1 (5th Cir.1997).

9. The *Ursery* Court held that a civil forfeiture statute did not constitute punishment for purposes of the Double Jeopardy Clause.

10. In *Marcus v. Hess,* the Court explained that only criminal punishment "subject[s] the defendant to 'jeopardy' within the constitutional meaning." *Hess,* 317 U.S. at 548–49, 63 S.Ct. 379 (citing *Helvering,* 303 U.S. at 398, 58 S.Ct. 630).

ing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Id.* (citing *United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)). Petitioners here concede that "the Ohio legislature intended the Administrative License Suspension to be civil in nature, separate and apart from any subsequent criminal prosecution."

■ If a legislature has shown an intention to establish a civil penalty, the court must then decide whether the statutory scheme is so punitive in either purpose or effect as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty." *Id.* (quoting *Rex Trailer Co. v. United States,* 350 U.S. 148, 154, 76 S.Ct. 219, 100 L.Ed. 149 (1956)). As to this examination, the United States Supreme Court has repeatedly declared that "only the clearest proof" can override the intent of the legislature and transform a civil remedy into a criminal penalty. *Id.; Ward,* 448 U.S. at 249, 100 S.Ct. 2636.

■ In *Hudson,* the Court pointed to the seven factors established in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), as providing "useful guideposts" in determining whether such proof exists:

> (1) "whether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment—retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purposes to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purposes assigned."

*Hudson,* at ——, 118 S.Ct. at 493 (citing *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)). The factors are "neither exhaustive nor dispositive," *Ward,* 448 U.S. at 249, 100 S.Ct. 2636, and "must be considered in relation to the statute on its face." *Hudson,* at

——, 118 S.Ct. at 493 (quoting *Kennedy,* 372 U.S. at 169, 83 S.Ct. 554).

■ The first *Kennedy* factor directs a review of "[w]hether the sanction involves an affirmative disability or restraint." *Hudson,* at ——, 118 S.Ct. at 493. An "affirmative disability or restraint" generally is some sanction "approaching the 'infamous punishment' of imprisonment." *Id.* at ——, 118 S.Ct. at 496 (quoting *Flemming v. Nestor,* 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960)). In *Hudson,* indefinite debarment from participating in the banking industry was insufficient to rise to such "infamous punishment" as imprisonment.

■ The administrative license suspension here is like—although less severe than—the debarment sanction upheld in *Hudson.* Debarment prevented Hudson from being employed in his occupation, banking. The *Hudson* sanction was indefinite, yet the Supreme Court held that occupational debarment was "nothing approaching" criminal punishment. *Id.* (quoting *Flemming,* 363 U.S. at 617, 80 S.Ct. 1367). In contrast, the administrative license suspensions here are limited in time.[11] Taken as a whole, the administrative license suspension did not involve affirmative disability.

*Kennedy* next directs this Court to consider whether the sanction "has historically been regarded as punishment." *Hudson,* at ——, 118 S.Ct. at 493. The *Hudson* Court found monetary penalties and occupational debarment were not such an "affirmative disability or restraint" as to rise to punishment: "We have long recognized that 'revocation of a privilege voluntarily granted,' such as a debarment, 'is characteristically free of the punitive criminal element.'" *Id.* at —— —— ——, 118 S.Ct. at 495–96 (quoting *Helvering,* 303 U.S. at 399 and n. 2, 58 S.Ct. 630). Under *Hudson,* we cannot regard the suspension of driving privileges as punishment.

■ Third, the *Hudson* and *Kennedy* Courts direct consideration of whether the sanction comes into play "only" upon a finding of scienter. *Id.* at ——, 118 S.Ct. at 493. The term "scienter" means "knowingly" and is used to signify a defendant's guilty knowl-

11. The Ohio courts granted some Petitioners oc-    cupational driving privileges.

edge. *Women's Medical Professional Corp. v. Voinovich,* 130 F.3d 187, 203 (6th Cir.1997) (citing BLACK'S LAW DICTIONARY 1345 (6th ed.1990)), *cert. denied,* —— U.S. ——, 118 S.Ct. 1347, 140 L.Ed.2d 496 (1998).

Under Ohio Rev.Code § 4511.191, the elements requiring administrative license suspension are, *inter alia:* (1) a lawful arrest for OMVI; (2) giving warnings regarding taking a breath or other alcohol test; and (3) failing or refusing to take the test. The statute does not require a finding of guilty knowledge before sanctions could be imposed.

■■■ The license suspensions do have a deterrent purpose—relevant under the fourth *Kennedy* factor—but "the mere presence of this purpose is insufficient to render a sanction criminal, as deterrence may serve civil as well as criminal goals." *Id.* (internal quotes and citations omitted).

Applying the fifth *Kennedy* factor, while the statutory scheme may intertwine the license suspension with the arrest for drunken driving, this is not sufficient to render the suspension criminally punitive in the Double Jeopardy context. To hold otherwise would undermine the state's ability to effectively regulate its highways. In similar circumstances, the *Hudson* Court said that a finding of ·double jeopardy "would severely undermine the Government's ability ·to engage in effective regulation of institutions such as banks." *Hudson,* at ——, 118 S.Ct. at 496.

As to the last two *Kennedy* factors, the administrative license statute protects other motorists and pedestrians who might be placed at risk if Ohio did not bar the petitioners from the highways for a time. The sanction does not appear excessive in relation to this goal. Under *Hudson,* the sanctions under Ohio Rev.Code § 4511.191 are not so punitive in nature or effect as to transform a civil remedy into a criminal penalty.

*Hudson* was not available to the district court at the time of its decision and that court did not expressly apply the *Kennedy* factors in its analysis. Instead, the district court analogized the license suspensions to the *in rem* civil forfeitures in *Ursery* that the Supreme Court found were not criminal punishment. The *Hudson* Court did not analogize between forfeiture and the civil monetary penalty and debarment at issue there.

Nonetheless, the district court's analysis is consistent with *Hudson* and its conclusions are similar to those reached by the First and Fourth Circuits in their consideration of whether administrative license suspensions are punishment that stop subsequent criminal prosecution.

In *Allen v. Attorney General of State of Maine,* 80 F.3d 569 (1st Cir.1996), the court considered whether the Double Jeopardy Clause barred the appellant's prosecution for Maine's equivalent of OMVI after Maine had suspended his driver's license. In analyzing a statutory scheme similar to Ohio's, the First Circuit carefully distinguished "those sanctions that constitute impermissible exercises of the government's power to punish and those that constitute permissible exercises of the government's remedial . authority (even if effectuating a specific remedy sometimes carries with it an unavoidable component of deterrence or retribution.)" *Id.* at 577 (quoting *United States v. Stoller,* 78 F.3d 710, 724 (1st Cir.1996), *cert. dismissed,* —— U.S. ——, 117 S.Ct. 378, 136 L.Ed.2d 297 (1996)).

In the case of suspension upon arrest for drunk driving, "the ninety-day license suspension can fairly be viewed as remedial inasmuch as it is rationally related to the apprehended danger and the potential harm. That is, the State could reasonably conclude from the petitioner's ... arrest alone that preservation of public safety warranted a breathing spell (in a temporary, ninety-day cancellation of driving privileges)." *Id.*

Although the sanctions under Ohio's statute are potentially longer than ninety days, the First Circuit noted that even longer, "durationally rigid restrictions, although they bear the sting of punishment from the recipient's perspective," plainly serve government's interest in preventing future harm. *Id.* (noting cases involving two- and five-year occupational bans). Similarly, the Fourth Circuit has stated that "if a civil sanction serves a remedial purpose, the duration of the sanction does not necessarily make it punishment." *United States v. Imngren,* 98 F.3d 811, 816 (4th Cir.1996).

Both the First and Fourth Circuits determined that the administrative license suspen-

sions at issue were remedial, not punitive, in nature. The decisions of our sister circuits and the district court here are consistent with our conclusions as governed by the Supreme Court's decision in *Hudson*.

Petitioners have not shown by the clearest proof that prosecution under § 4511.19 following an administrative license suspension is contrary to established constitutional law as determined by the United States Supreme Court. Accordingly, the district court did not err in denying habeas corpus relief.

## V.

We conclude that administrative license suspension under Ohio Rev.Code § 4511.191 followed by prosecution under § 4511.19 does not violate the Double Jeopardy Clause of the Fifth Amendment. We AFFIRM the district court's denial of petitioners' motion for habeas corpus.