743 A.2d 315 (2000)
327 N.J. Super. 256
Paul AUGE, Appellant,
v.
NEW JERSEY DEPARTMENT OF CORRECTIONS, Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted November 3, 1999.
Decided January 3, 2000.
*316 Paul Auge, appellant, pro se.
John J. Farmer, Jr., Attorney General, attorney for respondent (Michael W. Kiernan, Deputy Attorney General, on the brief).
Before Judges SKILLMAN, D'ANNUNZIO and FALL.
*317 The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
Appellant Paul Auge, who is incarcerated in New Jersey State Prison, appeals from respondent Department of Corrections' action in imposing a 10% surcharge upon his purchases from the prison commissary. These surcharges were imposed in conformity with Chapter 396 of the Laws of 1997, N.J.S.A. 30:4-15.1, which provides that "[e]very commissary in a county or State correctional facility operated for the sale of commodities shall collect a surcharge of 10% of the sales price of every item sold" and also exempts such sales from the retail sales tax. Appellant argues that because he is incarcerated for an offense committed prior to the enactment of N.J.S.A. 30:4-15.1, the imposition of the surcharge upon him violates the Double Jeopardy and Ex Post Facto Clauses of the Federal and State Constitutions. Appellant also argues that the surcharge violates the due process guarantees of the Federal and State Constitutions. We reject appellant's constitutional claims and affirm the imposition of the 10% surcharge.
In 1971, the Legislature enacted the Criminal Injuries Compensation Act (the Act). L. 1971, c. 317, N.J.S.A. 52:4B-1 to 21. "The primary purpose of the Act is to provide compensation to persons who have suffered bodily injury from the commission of a serious crime." White v. Violent Crimes Compensation Bd., 76 N.J. 368, 386, 388 A.2d 206 (1978). However, the Legislature failed during the 1970s to appropriate sufficient funds to provide adequate and timely compensation to violent crimes victims in accordance with the Act. See Assembly Judiciary, Law, Public Safety & Defense Committee, Statement to Assembly Bill No. 3648 (194 N.J. Leg., 2d Sess.1979) (noting that as of 1977 "[t]he number of claims as well as insufficient funding [had] created a situation where a claimant [had] to wait up to 3 ½ years before receiving relief"). To establish an additional source of funding, the Legislature enacted Chapter 396 of the Laws of 1979 (N.J.S.A. 2C:43-3.1), which required any person convicted of any crime or other enumerated offense to be assessed a penalty ranging from $25[1] to $10,000 and directed that the money collected from the penalty be deposited in a separate account for the compensation of victims of violent crimes. However, the penalties imposed under this legislation still failed to generate sufficient revenue to fully fund the program because they often could not be collected. Sponsor's Statement to S.2082 (207th N.J.Leg., 2d Sess.1997).
In an effort to make up for this continuing shortfall in the funding required to compensate the victims of violent crimes, the Legislature enacted Chapter 396 of the Laws of 1997, which imposes a 10% surcharge upon the price of all commodities purchased in prison commissaries and directs that money collected from this surcharge be deposited in the Victims of Crime Compensation Board Account. The Assembly Appropriation Committee's statement concerning the bill notes that:
The VCCB [Violent Crimes Compensation Board] surcharge authorized under this bill is expected to generate between $1.2 and $1.5 million annually for the VCCB. When coupled with federal matching funds, the VCCB should have approximately $2 million in new moneys available to compensate crime victims.

[Assembly Appropriations Committee, Statement to Senate Committee Substitute for S.2082 (207th N.J.Leg., 2d Sess.1997).]

I
Appellant argues that because he is serving a sentence for offenses committed *318 prior to the enactment of 30:4-15.1,[2] the imposition of the 10% surcharge upon him violates the Ex Post Facto and Double Jeopardy Clauses of the State and Federal Constitutions.
When a claim is made that a monetary assessment violates the Ex Post Facto Clause of Article I or the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution, the threshold question is whether the assessment constitutes a "criminal punishment." Hudson v. United States, 522 U.S. 93, ___, 118 S.Ct. 488, 493, 139 L.Ed.2d 450, 458-59 (1997); Kansas v. Hendricks, 521 U.S. 346, 367-71, 117 S.Ct. 2072, 2085-86, 138 L.Ed.2d 501, 519-21 (1997); Department of Revenue of Montana v. Kurth Ranch, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994); see also E.B. v. Verniero, 119 F.3d 1077, 1092 (3d Cir.1997), cert. denied, 522 U.S. 1110, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998); Doe v. Poritz, 142 N.J. 1, 70-71, 662 A.2d 367 (1995). To determine whether an assessment imposes a "criminal punishment" or is civil in nature, "[a] court must first ask whether the legislature `... indicated either expressly or impliedly a preference for one label or the other.'" Hudson, supra, 522 U.S. at ___, 118 S.Ct. at 493, 139 L.Ed.2d at 459 (quoting United States v. Ward, 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.E.2d 742, 749 (1980)). If the legislature has characterized an assessment as civil, the court still must determine "`whether the statutory scheme [is] so punitive either in purpose or effect,' as to `transfor[m] what was clearly intended as a civil remedy into a criminal penalty.'" Ibid. (quoting Ward, supra, 448 U.S. at 248-49, 100 S.Ct. at 2641, 65 L.Ed.2d at 749-50, and Rex Trailer Co. v. United States, 350 U.S. 148, 154, 76 S.Ct. 219, 222, 100 L.Ed. 149, 155 (1956)). However, "`only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Ibid. (quoting Ward, supra, 448 U.S. at 249, 100 S.Ct. at 2641-42, 65 L.Ed.2d at 749).
Our Supreme Court has interpreted the protections provided by the Double Jeopardy Clause of the New Jersey Constitution, N.J. Const., art. I, para. II, to be "coextensive" with those provided under the United States Constitution, State v. Widmaier, 157 N.J. 475, 490, 724 A.2d 241 (1999), and has recently applied the Hudson analytical framework to a double jeopardy claim under the New Jersey Constitution. Id. at 492-94, 499-500. The Court also has held that the interpretation of the Ex Post Facto Clause of the New Jersey Constitution, N.J. Const., art. IV, § 7, para. 3, should follow the interpretation of the Ex Post Facto Clause of the United States Constitution. State v. Muhammad, 145 N.J. 23, 56-57, 678 A.2d 164 (1996); Doe v. Poritz, supra, 142 N.J. at 42-43 n. 10, 662 A.2d 367. Therefore, the tests set forth in Hudson govern appellant's double jeopardy and ex post facto claims under both the United States and New Jersey Constitutions.
It is manifest that under these tests the 10% surcharge upon purchases from prison commissaries does not constitute a "criminal punishment" and consequently does not violate the Double Jeopardy or Ex Post Facto Clauses of the Federal and State Constitutions. The Legislature characterized the 10% assessment as a "surcharge," rather than any form of penalty, and thus clearly contemplated that it was civil in nature. Hudson, supra, 522 U.S. at ___, 118 S.Ct. at 493, 139 L.Ed.2d at 459. In addition, the assessment is not "so punitive in purpose or effect" that it must be considered a criminal penalty. Ibid. It is not imposed upon an inmate's conviction for an offense but rather when he makes purchases from the prison commissary. Moreover, the *319 amount he must pay does not depend upon the gravity of his offense but rather the amount of his commissary purchases. Most significantly, the evident purpose of the surcharge is not to impose additional "punishment" upon an inmate but rather to generate an additional revenue source for the Violent Crimes Compensation Fund, and the amount of the assessment is not "excessive in relation to [this] purpose." Hudson, supra, 522 U.S. at ___, 118 S.Ct. at 493, 139 L.Ed.2d at 459. In fact, the 10% surcharge is only 4% higher than the 6% retail sales tax imposed on the purchase of most commodities in stores outside the prison system. See N.J.S.A. 54:32B-3. Thus, the surcharge may be properly viewed as simply a special sales tax on purchases from prison commissaries.
The 10% surcharge upon purchases from prison commissaries is fundamentally different from the $100 per ounce tax on marijuana which the Court held to be violative of the Double Jeopardy Clause in Kurth Ranch, supra. In that case, the Supreme Court concluded that even though the marijuana assessment was ostensibly a tax, it actually constituted a second punishment for the crime of possession of marijuana. Id. at 784, 114 S.Ct. at 1948, 128 L.Ed.2d at 781-82. In reaching this conclusion, the Court relied on the fact that the assessment was disproportionate to the value of the marijuana (more than eight times the drug's market value), it was "conditioned on the commission of a crime," and its evident purpose was to deter possession of marijuana. Id. at 780-81, 114 S.Ct. at 1946-47, 128 L.Ed.2d at 779.
In contrast, the 10% surcharge on prison purchases is not exorbitantly high compared to other sales and excise taxes, its imposition is not conditioned upon the commission of a crime but rather upon the purchase of lawful commodities such as soda, food, candy and tobacco, and it has no deterrent purpose. Consequently, unlike the marijuana tax involved in Kurth Ranch, the surcharge is not an additional monetary penalty imposed for the commission of a crime. See United States v. Beaty, 147 F. 3d 522, 525-26 (6th Cir. 1998), cert. denied, ___ U.S. ___, 119 S.Ct. 802, 142 L.Ed.2d 663 (1999).
Our decision in State v. Chapman, 187 N.J.Super. 474, 477-78, 455 A.2d 514 (App. Div.1982), which held that the state constitutional prohibition against ex post facto legislation would be violated by imposition of the penalty mandated by N.J.S.A. 2C:43-3.1 for an offense committed prior to its effective date, has no relevancy with respect to the constitutionality of the surcharge imposed upon purchases from prison commissaries. Instead, the present case is closer to Mourning v. Correctional Med. Servs., 300 N.J.Super. 213, 232-33, 692 A.2d 529 (App.Div.), certif. denied, 151 N.J. 468, 700 A.2d 880 (1997), which rejected a claim that a statute requiring inmates to make medical copayments in order to partially defray the costs of their health care violated the constitutional prohibitions against ex post facto legislation. In Mourning, we agreed with the State's argument that medical copayments by prisoners were "no more `punitive' than the copayments that millions of non-incarcerated citizens throughout the nation are called upon to pay under the terms of their health care plans." Id. at 233, 692 A.2d 529. Similarly, the 10% surcharge upon inmates' purchases from prison commissaries is no more "punitive" than the sales and excise taxes that are levied upon non-incarcerated citizens.
The fact that the Legislature has directed that the money derived from the surcharge shall be deposited in the Victims of Crime Compensation Board Account, which also receives money from the penalty imposed under N.J.S.A. 2C:43-3.1, does not transform the surcharge into a criminal penalty. The incidence of the surcharge upon inmates who make purchases from the commissary is the same, regardless of whether the revenues it generates are allocated to the special purpose of *320 providing compensation to the victims of violent crimes or used for the same purposes as revenues generated from other tax assessments. Therefore, the imposition upon appellant of the 10% surcharge for his purchases from the prison commissary does not violate the Ex Post Facto or Double Jeopardy Clauses of the United States or New Jersey Constitutions.

II
We turn next to appellant's claim that the 10% surcharge violates the due process guarantees of the Federal and State Constitutions. Although appellant has not fully developed this argument, we assume his claim is that N.J.S.A. 30:4-15.1 violates substantive due process.
"[A] state statute does not violate substantive due process if the statute reasonably relates to a legitimate legislative purpose and is not arbitrary or discriminatory." In re "Plan for Orderly Withdrawal from New Jersey" of Twin City Fire Ins. Co., 129 N.J. 389, 406, 609 A.2d 1248 (1992) (quoting Greenberg v. Kimmelman, 99 N.J. 552, 563, 494 A.2d 294 (1985)), cert. denied, 506 U.S. 1086, 113 S.Ct. 1066, 122 L.Ed.2d 370 (1993). Moreover, "[e]ven if a court cannot ascertain the actual purpose of the statute, it should sustain the statute if it has any conceivable rational purpose." In re C.V.S. Pharmacy Wayne, 116 N.J. 490, 498, 561 A.2d 1160 (1989), cert. denied, 493 U.S. 1045, 110 S.Ct. 841, 107 L.Ed.2d 836 (1990); see also Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261, 273 (1992) ("As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended.").
We are satisfied that raising additional revenue to compensate victims of violent crimes is a "legitimate legislative purpose" and that a surcharge upon purchases of commodities by persons incarcerated for crimes is "reasonably related" to this purpose. The Legislature could rationally have determined that a shortfall in the funding required to fully compensate the victims of violent crimes should be paid by the general class of persons whose activities created the obligation persons who are incarcerated for the commission of crimes. We recognize that the surcharge is imposed upon some inmates who have not committed violent crimes. However, this is equally true of the penalties imposed under N.J.S.A. 2C:43-3.1,[3] and appellant does not suggest that the imposition of those penalties upon non-violent offenders violates due process guarantees. Cf. In re American Reliance Ins. Co., 251 N.J.Super. 541, 553-54, 598 A.2d 1219 (App.Div.1991) ("[I]n the area of economic legislation, the legislature does not violate equal protection or due process `because the classifications made by its laws are imperfect.'") (quoting Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161-62, 25 L.Ed.2d 491, 501-02 (1970)), certif. denied, 127 N.J. 556, 606 A.2d 369 (1992). Moreover, as a convicted murderer, appellant has no standing to object to the surcharge on the ground that it is imposed upon non-violent offenders.
There is also an alternative ground upon which the surcharge may be found to be rationally related to a legitimate legislative purpose. Although the Legislature has directed that money collected from the surcharge shall be deposited in the Victims of Crime Compensation Board Account, it could just as easily have directed that that money be deposited in the General State Fund. In that event, the surcharge could be viewed as simply an additional source of revenue to defray the substantial costs the State incurs to provide inmates with food, clothing, medical *321 care and other necessities. It is well established that special assessments upon inmates for their maintenance costs do not violate substantive due process. See, e.g., Christiansen v. Clarke, 147 F.3d 655, 657 (8th Cir.) (rejecting due process challenge to prison regulation imposing deduction for maintenance costs from prisoners' earnings in work release program), cert. denied, ___ U.S. ___, 119 S.Ct. 554, 142 L.Ed.2d 461 (1998); Ervin v. Blackwell, 733 F.2d 1282, 1286 (8th Cir.1984) (same); Ilkanic v. City of Fort Lauderdale, 705 So.2d 1371, 1372-73 (Fla.1998) (rejecting due process challenge to statute imposing $50 per diem charge against convicted offenders for period of incarceration); Mourning, supra, 300 N.J.Super. at 227-30, 692 A.2d 529; Cumbey v. State of Oklahoma, 699 P.2d 1094, 1098 (Okla.1985) (rejecting constitutional attack upon statute which requires inmates to pay 50% of income derived from employment other than in state prison industries to defray the costs of their incarceration), cert. denied, 474 U.S. 838, 106 S.Ct. 115, 88 L.Ed.2d 94 (1985). Although the Legislature has directed that revenues derived from the surcharge shall be used to compensate the victims of violent crimes, a legislative directive that state revenue shall be allocated to a particular purpose is only effective if confirmed by an appropriation in the Annual Appropriations Act. See Karcher v. Kean, 97 N.J. 483, 488-91, 496-97, 479 A.2d 403 (1984); City of Camden v. Byrne, 82 N.J. 133, 145-55, 411 A.2d 462 (1980). Consequently, the Legislature remains free to use the revenue derived from the surcharge for any purpose it sees fit, including the maintenance of inmates, and thus the cases upholding the constitutionality of special assessments upon inmates for maintenance costs support the constitutionality of N.J.S.A. 30:4-15.1.
For these reasons, the 10% surcharge upon purchases from prison commissaries does not violate the due process guarantees of the Federal and State Constitutions.
Affirmed.
NOTES
[1] The minimum amount of the penalty has since been increased to $50. L. 1991, c. 329, §3.
[2] Appellant is serving a life sentence for a murder and various other offenses committed in 1975.
[3] A violent crimes compensation penalty is imposed as part of the judgment of conviction for any crime, disorderly or petty disorderly persons offense, act of delinquency and even certain motor vehicle offenses. N.J.S.A. 2C:43-3.1.