885 A.2d 445 (2005)
381 N.J. Super. 155
NEW JERSEY STATE CONFERENCE-NAACP, the Latino Leadership Alliance of New Jersey, Earl Prather, Timothy Strickland, Kareemah Terry, Michael E. Mackason, Dan Thompson, Charles Thomas, Zenon Quiles, Robert Padilla, Armando Ortiz, Christopher Ortiz, Councilwoman Patricia Perkins-Auguste, Councilman Carlos J. Alma, in their own right and as on behalf of all others similarly situated, Plaintiffs-Appellants,
v.
Peter C. HARVEY, attorney general of New Jersey in his official capacity, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 27, 2005.
Decided November 2, 2005.
*446 Frank Askin argued the cause for appellants (Rutgers Constitutional Litigation Clinic and Southern Regional Office of the American Civil Liberties Union, attorneys; Mr. Askin and Laughlin McDonald, on the brief).
Jeffrey Burstein, Assistant Attorney General, argued the cause for respondent (Peter C. Harvey, Attorney General, attorney; Mr. Burstein, of counsel and on the brief).
Craig Levine argued the cause for amicus curiae New Jersey Institute for Social Justice (Lowenstein Sandler, attorneys; Mr. Levine and Nancy Fishman, of counsel, and Barbra Spillman Schweiger and Jason E. Halper, on the brief).
Derek S. Tarson, New York, NY, argued the cause for amici curiae Criminologists (Debevoise & Plimpton, attorneys; Sean Mack, on the brief).
Before Judges COBURN, COLLESTER, and LISA.
The opinion of the court was delivered by
COBURN, P.J.A.D.
Relying solely on the New Jersey Constitution, plaintiffs filed a complaint in the Chancery Division seeking to invalidate a statute on the ground that it denied African-Americans and Hispanics equal protection of the law. The statute, which plaintiffs properly concede is specifically authorized in Article II of the New Jersey Constitution, prohibits from voting all people on parole or probation for indictable offenses. The complaint does not allege that the statute was enacted with the invidious purpose of discriminating against African-Americans or Hispanics. Instead, it asserts that the criminal justice system in New Jersey discriminates against African-Americans and Hispanics, thereby disproportionately increasing their population among parolees and probationers and diluting their political power. This, they say, results in a denial of equal protection under the state Constitution.
The Attorney General moved to dismiss the complaint for "failure to state a claim upon which relief can be granted." R. 4:6-2(e). Judge Miriam M. Span filed a thorough and well-reasoned opinion in support of her order dismissing the complaint, and plaintiffs appealed. Because the statute in question is specifically authorized by the New Jersey Constitution, we affirm.
The right to vote in New Jersey is granted and limited by Article II of the state Constitution in the following manner. First it gives all United States citizens the right to vote if they satisfy certain age and residency requirements. N.J. Const. art. II, § 1, ¶ 3. Next it guarantees the right to vote to all military personnel absent from their election districts during a time of *447 war, and empowers the Legislature to provide for absentee voting by members of the armed forces of the United States in time of peace. N.J. Const. art. II, § 1, ¶ 4. Next it provides that no member of the armed forces of the United States "shall be considered a resident of this State by being stationed ... within this State." N.J. Const. art. II, § 1, ¶ 5. Next it denies the right of suffrage to "idiot or insane person[s]." N.J. Const. art. II, § 1, ¶ 6. And finally in the paragraph directly implicated in this case, it says this:
The Legislature may pass laws to deprive persons of the right of suffrage who shall be convicted of such crimes as it may designate. Any person so deprived, when pardoned or otherwise restored by law to the right of suffrage, shall again enjoy that right.
[N.J. Const. art. II, § 1, ¶ 7.]
Pursuant to that authority, the Legislature enacted the statute at issue, which, in pertinent part, says this:
No person shall have the right of suffrage 
....
(8) Who is serving a sentence or is on parole or probation as the result of a conviction of any indictable offense under the laws of this or another state or of the United States.
[N.J.S.A. 19:4-1(8)(emphasis added).]
Our duty is to sustain an act of the Legislature "unless its repugnancy to the Constitution is clear beyond a reasonable doubt." State v. Muhammad, 145 N.J. 23, 41, 678 A.2d 164 (1996). And "[t]he polestar of constitutional construction is always the intent and purpose of the particular provision." State v. Apportionment Comm'n, 125 N.J. 375, 381, 593 A.2d 710 (1991). Although a literal reading of a Constitutional declaration may be rejected when it is inconsistent with the spirit, policy and true sense of the declaration, Lloyd v. Vermeulen, 22 N.J. 200, 205-06, 125 A.2d 393 (1956), we must presume "`that the words employed [in the Constitution] have been carefully measured and weighed to convey a certain and definite meaning, with as little as possible left to implication....'" Apportionment Comm'n, supra, 125 N.J. at 382, 593 A.2d 710 (citation omitted). A "convenient aid[] to the proper judicial implementation of the overriding constitutional purpose and plan" is that "the general provisions of the Constitution must give way to its particular provisions." Kervick v. Bontempo, 29 N.J. 469, 479, 150 A.2d 34 (1959). And when interpreting a constitution, "real effect should be given to all the words it uses." Myers v. United States, 272 U.S. 52, 151, 47 S.Ct. 21, 37, 71 L.Ed. 160, 180 (1926).
In this case, the critical and specific Constitutional declaration is perfectly clear. Article II authorizes the Legislature to disenfranchise entirely people "convicted of such crimes as it may designate." Those convicts may not vote unless pardoned or unless "otherwise restored by law to the right of suffrage...." Art. II, § 1, ¶ 7. The legislation at issue, N.J.S.A. 19:4-1(8), designates the crimes requiring disenfranchisement as "indictable offense[s] under the laws of this or another state or of the United States," and limits the period of disenfranchisement during a defendant's actual service on parole or probation. Thus, it clearly complies with this specific constitutional mandate.
Relying primarily on Justice Handler's dissent in State v. Muhammad, supra, and Serrano v. Priest, 18 Cal.3d 728, 135 Cal. Rptr. 345, 557 P.2d 929 (1976), plaintiffs argue that even though the statute is specifically authorized by the state Constitution, it remains subject to judicial review under the equal protection doctrine. Although *448 our state Constitution "has no specific equal protection clause analogous to that in the Fourteenth Amendment," we have consistently construed it as providing "analogous or superior protection to our citizens." Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 79, 389 A.2d 465 (1978). But neither Justice Handler's dissent nor Serrano support plaintiffs' position that judicial intervention is proper in the circumstances of this case under the equal protection doctrine.
Justice Handler acknowledged that when a specific provision of the state Constitution is intended to limit other rights protected by the state Constitution it must be enforced. State v. Muhammad, supra, 145 N.J. at 74, 678 A.2d 164. (Handler, J. dissenting) And in Serrano, the California Supreme Court said that
[a] constitutional provision creating the duty and power to legislate in a particular area always remains subject to general constitutional requirements governing all legislation unless the intent of the Constitution to exempt it from such requirements plainly appears.

[135 Cal.Rptr. at 372, 557 P.2d 929 (emphasis added).]
Those principles were accepted by the majority opinion in State v. Muhammad, supra, 145 N.J. at 44, 678 A.2d 164, although Justice Handler disagreed with their implementation, and were previously endorsed by our Supreme Court in Southern Burlington County NAACP v. Mount Laurel Township, 67 N.J. 151, 336 A.2d 713, appeal dismissed, cert. denied, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975). Thus, for example, if the Legislature had specifically prohibited only African-Americans or Hispanics from voting while on parole or probation, the statute would violate the doctrine of equal protection under the state Constitution despite the general authorization given to legislate in this area. But if the state Constitution specifically provided for denial of suffrage to those groups, as it did with respect to Federal soldiers merely stationed here, Art. II, § 1, ¶ 5, and "idiot or insane person[s]," Art. II, § 1, ¶ 6, then the only source of relief would be the United States Constitution.
That is not to suggest that the facially neutral statute at issue could have withstood attack under our state Constitution if it had been enacted with the invidious purpose of denying suffrage to African-Americans and Hispanics. Were that the case, we would grant relief under our doctrine of equal protection, just as the United States Supreme Court did under the Fourteenth Amendment in Hunter v. Underwood, 471 U.S. 222, 229, 105 S.Ct. 1916, 1921, 85 L.Ed.2d 222 (1985). But plaintiffs do not charge the Legislature with an invidious purpose; rather, they merely argue that the statute inadvertently has a disparate impact on certain minority groups. When, as here, a statute is facially neutral, disparate impact is an insufficient basis for relief under our equal protection doctrine. Greenberg v. Kimmelman, 99 N.J. 552, 580, 494 A.2d 294 (1985). Finally, we note that the United States Supreme Court has held that the equal protection clause of the Fourteenth amendment is not violated by facially neutral state felon disenfranchisement statutes adopted without a discriminatory purpose. Richardson v. Ramirez, 418 U.S. 24, 56, 94 S.Ct. 2655, 2671, 41 L.Ed.2d 551 (1974).
Affirmed.