895 A.2d 453 (2006)
384 N.J. Super. 481
A.A., A.B., A.C., A.D. (by M.M., his natural parent), A.E., A.F., and A.G. (all fictitious initials), individually and on behalf of others similarly situated, Plaintiffs-Appellants,
v.
STATE of New Jersey, Richard J. Codey, in his official capacity as Acting Governor, State of New Jersey, Peter C. Harvey, in his official capacity as Attorney General, State of New Jersey, and Joseph R. Fuentes, in his official capacity as Superintendent of the New Jersey State Police, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued December 12, 2005.
Decided April 6, 2006.
*454 Brian J. Neff, New York, NY, (Schiff Hardin) of the New York bar, admitted pro hac vice, argued the cause for appellants (Yvonne Smith Segars, Public Defender, and Gibbons Del Deo, Dolan, Griffinger & Vecchione, cooperating counsel for the ACLU of New Jersey Foundation, attorneys; Mr. Neff, Michael Z. Buncher, Deputy Public Defender, Lawrence Lustberg and Edward L. Barocas, on the brief).
Mary Beth Wood, Deputy Attorney General, argued the cause for respondents (Peter C. Harvey, Attorney General, attorney; Patrick DeAlmeida, Assistant Attorney General, of counsel; B. Stephan Finkel, Assistant Attorney General, and Ms. Wood, on the brief).
Before Judges STERN, FALL[1] and C.S. FISHER.
The opinion of the court was delivered by
STERN, P.J.A.D.
This appeal requires us to consider the constitutionality, under the Supreme law of the land embodied in the Federal Constitution, of a provision of the New Jersey Constitution.
*455 Plaintiffs appeal from a judgment, entered on December 20, 2004, dismissing their complaint challenging Article IV, section VII, paragraph 12 of the New Jersey Constitution (hereinafter Paragraph 12),[2] and its implementing legislation, N.J.S.A. 2C:7-12 to -19 (hereinafter "Internet Registry Act" or "the Act" adopted as part of and supplement to "Megan's Law," N.J.S.A. 2C:7-1 to -11).[3] The constitutional amendment authorizes, and the statute implements, the posting of information about sex offenders on the Internet. N.J.S.A. 2C:7-13. The Act requires that information contained in the central registry of sex offender registrations, maintained by the Superintendent of the State Police, be made available to the public on the internet. See N.J.S.A. 2C:7-4, -13.
In essence, plaintiffs assert that "[u]nlike the prior notification law, which was upheld against constitutional attack in large part because it only permitted tailored notification to persons likely to encounter the offender, this new notification scheme requires unlimited, world-wide notification via the Internet." Plaintiffs assert that Paragraph 12 "singles out sex offenders for lesser protection under state law" and that no court has held that such singling out "comports with the federal constitution." They further assert that Paragraph 12 "is a rare example of a per se violation of the federal Equal Protection Clause," and "runs afoul of the rights guaranteed Plaintiffs under the Ex Post Facto and Double Jeopardy clauses of the United States Constitution" and, assuming that the State constitutional provision is itself unconstitutional, that the Internet Registry Act violates the right of privacy recognized by the State Constitution, as well as the ex post facto and double jeopardy clauses of the State Constitution.[4]
We affirm substantially for the reasons expressed in Judge Andrew Smithson's opinion of December 20, 2004, as developed hereinafter.

I.
In Doe v. Poritz, 142 N.J. 1, 662 A.2d 367 (1995), our Supreme Court held that "Megan's Law" (L. 1994, c. 128, 133), N.J.S.A. 2C:7-1 to -11, which provided for registration and community notification regarding sex offenders,[5] was constitutional. *456 Under Megan's Law, defendants who are convicted, adjudicated delinquent, or found not guilty by reason of insanity of a sex offense are required to register with designated State officials, N.J.S.A. 2C:7-2, and the Superintendent of State Police is obligated to maintain a central registry of all Megan's Law registrations. N.J.S.A. 2C:7-4(d).
Each registration under Megan's Law must include the registrant's "name, social security number, age, race, sex, date of birth, height, weight, hair and eye color, address of legal residence, address of any current temporary residence, date and place of employment, . . . any anticipated or current school enrollment," "date and place of each conviction, adjudication or acquittal by reason of insanity, indictment number, fingerprints, . . . a brief description of the crime or crimes for which registration is required," and "[a]ny other information that the Attorney General deems necessary to assess [the] risk of future commission of a crime." N.J.S.A. 2C:7-4(b). See also Doe v. Poritz, supra, 142 N.J. at 21, 662 A.2d 367; N.J.S.A. 2C:7-8 (requiring the Attorney General to promulgate guidelines for notification under the Act).
Each Megan's Law registrant is assigned to one of "three levels of notification depending upon the risk of re-offense," see N.J.S.A. 2C:7-8(a), (c), as determined by a weighing of factors, "low" risk (Tier One), "moderate" risk (Tier Two), or "high" risk (Tier Three). N.J.S.A. 2C:7-8c. The degree of community notification in each case is determined by the registrant's tier assignment. N.J.S.A. 2C:7-5 to -8. See Doe v. Poritz, supra, 142 N.J. at 21-22, 662 A.2d 367. However, nothing in Megan's Law "shall be construed to prevent law enforcement officers from providing community notification concerning any person who poses a danger under circumstances that are not provided for in [the] act." N.J.S.A. 2C:7-10.
In Doe v. Poritz, supra, the Supreme Court held that the registration and community notification provisions of Megan's Law did not constitute "punishment," and therefore did not violate the ex post facto, double jeopardy, cruel and unusual punishment, or bill of attainder clauses of the Federal Constitution, or the equivalent provisions of the State Constitution (which were to be interpreted consistently with the Federal Constitution, 142 N.J. at 42-43, 662 A.2d 367). Rather, the legislation was "remedial" in nature and free of "punitive" intent. Ibid. The Court concluded:
[A] statute that can fairly be characterized as remedial, both in its purpose and implementing provisions, does not constitute punishment even though its remedial provisions have some inevitable deterrent impact, and even though it may indirectly and adversely affect, potentially severely, some of those subject to its provisions. Such a law does not become punitive simply because its impact, in part, may be punitive unless the only explanation for that impact is a punitive purpose: an intent to punish.
[Id. at 43, 662 A.2d 367.]
See also id. at 73-75, 662 A.2d 367 (statute is "remedial," it is designed to protect the public, and does not constitute "punishment").[6]
With respect to the right to privacy, the Court further held that the registration *457 and community notification provisions of Megan's Law did not deprive sex offenders of their constitutional right to privacy under either the Federal or State Constitutions. A convicted offender's privacy interests were minimally implicated by the public disclosure of his or her home address as part of the information disclosed and by the public disclosure of the other relevant information. In any event, any privacy interests were "substantially outweighed" by the strong State interest in public disclosure for the purpose of protecting the public from the danger of recidivism by sex offenders. Therefore, there was no constitutional violation. Id. at 77-91, 662 A.2d 367.
In addition, the Court held that Megan's Law did not violate the equal protection rights of sex offenders under either the Federal or State Constitutions. Sex offenders were not a "suspect class," and the State's decision to treat them as a class was not arbitrary. Therefore, the registration and community notification provisions of Megan's Law were subject only to a "rational basis" analysis, which posed no constitutional concern for the Court. Doe v. Poritz, supra, 142 N.J. at 91-95, 662 A.2d 367. However, in order to sustain the constitutionality of the law, the Court held that the prosecutor's decision to provide community notification, including the tier classification which affected the scope of notification, must be subject to judicial review before such notification was given. Id. at 29-30, 662 A.2d 367. Such review was constitutionally required as a matter of procedural due process and fundamental fairness. The Court outlined detailed instructions regarding the nature of the review proceedings and the procedures to be followed. Id. at 12, 30-40, 99-109, 662 A.2d 367.
In summary, Doe v. Poritz, supra, described its holding in the following words:
The essence of our decision is that the Constitution does not prevent society from attempting to protect itself from convicted sex offenders, no matter when convicted, so long as the means of protection are reasonably designed for that purpose and only for that purpose, and not designed to punish; that the community notification provided for in these laws, given its remedial purpose, rationality, and limited scope, further assured by our opinion and judicial review, is not constitutionally vulnerable because of its inevitable impact on offenders; that despite the possible severity of that impact, sex offenders' loss of anonymity is no constitutional bar to society's attempt at self-defense. The Registration and Notification Laws are not retributive laws, but laws designed to give people a chance to protect themselves and their children. They do not represent the slightest departure from our State's or our country's fundamental belief that criminals, convicted and punished, have paid their debt to society and are not to be punished further. They represent only the conclusion that society has the right to know of their presence not in order to punish them, but in order to protect itself. The laws represent a conclusion by the Legislature that those convicted sex offenders who have successfully, or apparently successfully, been integrated into their communities, adjusted their lives so as to appear no more threatening than anyone else in the neighborhood, are entitled not to be disturbed simply because of that prior offense and conviction; but a conclusion as well, that the characteristics of some of them, and the statistical information concerning them, make it clear that despite such integration, reoffense is a realistic risk, and knowledge of their presence a realistic protection against it.[7]

*458 [Id. at 12-13, 662 A.2d 367.]
Following Doe v. Poritz, supra, the Supreme Court upheld the Attorney General's Registrant Risk Assessment Scale under which prosecutors assess the risk of re-offense and appropriate tier level of notification. In re Registrant J.M., 167 N.J. 490, 501-04, 772 A.2d 349 (2001); In re C.A., 146 N.J. 71, 88-110, 679 A.2d 1153 (1996). The Court emphasized, however, that a court reviewing a tier classification should make its own determination on a case-by-case basis, using the scale only as a guide. In re C.A., supra, 146 N.J. at 108-09, 679 A.2d 1153.
In In re Registrant G.B., 147 N.J. 62, 85, 685 A.2d 1252 (1996), the Court further held that a registrant may lodge "three distinct challenges to his [or her] tier designation": "a registrant may introduce evidence [(1)] that the calculation that led to the Scale score was incorrectly performed either because of a factual error, because the registrant disputes a prior offense, because the variable factors were improperly determined, or for similar reasons"; (2) "that the Scale calculations do not properly encapsulate his [or her] specific case[,]" and he or she "deserves to be placed in a tier other than that called for by the prosecutor's Scale score"; and (3) "that the extent of notification called for by his [or her] tier categorization is excessive because of unique aspects of his [or her] case." Ibid. In other words, a registrant may lodge challenges that "relate to characteristics of the individual registrant and the shortcomings of the Scale in [the registrant's] particular case." Ibid. A registrant, however, may not challenge "the Scale itself or . . . the weight afforded to any of the individual factors that comprise the Scale." Ibid.
The G.B. Court further held that, subject to the trial court's discretion, expert testimony is admissible with respect to the permissible types of challenges to a tier designation. At all times, however, "[t]he trial court has the ultimate authority to decide what weight to attach to the Scale and what weight to attach to expert testimony." Ibid. In other words, the courts have "the nondelegable responsibility to determine a registrant's tier classification and [therefore] the scope of community notification." Ibid. Moreover, the State has the burden to prove the propriety of the tier classification and notification plan by clear and convincing evidence. In re M.F., 169 N.J. 45, 54, 776 A.2d 780 (2001). On those bases Megan's Law has been sustained and implemented in New Jersey.
Fundamental challenges to Megan's Law have been similarly unsuccessful in the federal courts. See Artway v. Attorney General, 81 F.3d 1235 (3d Cir.1996) (registration is not "punishment" and therefore does not violate ex post facto, double jeopardy, or bill of attainder provisions of the federal constitution; "repetitive and compulsive" classification does not violate equal protection, and the law is not violative of due process or unconstitutionally vague); E.B. v. Verniero, 119 F.3d 1077, 1081, 1105-1107 (3d Cir.1997), cert. denied, 522 U.S. 1109, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998) (notification requirement not "punishment" and not violative of ex post facto or double jeopardy provisions of federal constitution, but due process required State to prove by clear and convincing evidence that Tier Two or Three classification and notification plan was appropriate prior to notification); Paul P. *459 v. Verniero, (hereinafter Paul P. I) 170 F.3d 396 (3d Cir.1999) (no violation of right to privacy); Paul P. v. Farmer, (hereinafter Paul P. II) 227 F.3d 98 (3d Cir.2000) (Attorney General Guidelines regarding community notification do not infringe on privacy interests).
Plaintiffs insist that the Internet postings provide far more access to registrant information and therefore constitute "punishment" which was not involved in the original Megan's Law as sustained, with modification to provide for hearings on contested risk assessments, in Doe v. Poritz and by the Third Circuit. Plaintiffs correctly note that the opinions upholding community notification focused on the relatively limited nature of the notification of Tier Two and Tier Three offenders subject to public disclosure. See N.J.S.A. 2C:7-8(c) (scope of notification). Plaintiffs assert, in any event, that Paragraph 12 violates the Equal Protection clause of the Federal Constitution.

II.
The constitutional amendment embodied in Paragraph 12 trumps all other provisions of the State Constitution. It provides:

Notwithstanding any other provision of this constitution and irrespective of any right or interest in maintaining confidentiality, it shall be lawful for the Legislature to authorize by law the disclosure to the general public of information pertaining to the identity, specific and general whereabouts, physical characteristics and criminal history of persons found to have committed a sex offense. [N.J. Const. art. IV, § 7, ¶ 12 (emphasis added).]
In light of the language of Paragraph 12, there can be little doubt that any other provision of the State Constitution can be utilized to prohibit disclosures regarding those "found to have committed a sex offense." Moreover, in the absence of any legislative or other history to the contrary, the introductory language of Paragraph 12 cannot be read to apply only to those offenders convicted after its effective date. Therefore, any other State constitutional provisions concerning retroactive impact cannot be said to apply independent of the fact they have previously been read to be coextensive with analogous provisions of the Federal Constitution.
We reject plaintiffs' challenges to Paragraph 12 under the double jeopardy and ex post facto provisions of the Federal Constitution. In fact, the Third Circuit denied a preliminary injunction in this case based on those arguments and plaintiffs' contentions that their privacy rights were violated. See A.A. v. New Jersey, 341 F.3d 206, 209 (3d Cir.2003) (relying on Smith v. Doe, 538 U.S. 84, 89-91, 123 S.Ct. 1140, 1145-46, 155 L.Ed.2d 164, 174-76 (2003)).
In Smith v. Doe, supra, the United States Supreme Court held that Alaska's Megan's Law was not punishment prohibited by the ex post facto clause of the Federal Constitution. Id. at 92-106, 123 S.Ct. at 1146-54, 155 L.Ed.2d at 176-85. In reaching this conclusion, the Court stated:
[T]he stigma of Alaska's Megan's Law results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public. Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment. On the contrary, our criminal law tradition insists on public indictment, public trial, and public imposition of sentence. Transparency is essential to maintaining public respect for the criminal justice *460 system, ensuring its integrity, and protecting the rights of the accused. The publicity may cause adverse consequences for the convicted defendant, running from mild personal embarrassment to social ostracism. In contrast to the colonial shaming punishments, however, the State does not make the publicity and the resulting stigma an integral part of the objective of the regulatory scheme.
The fact that Alaska posts the information on the Internet does not alter our conclusion. It must be acknowledged that notice of a criminal conviction subjects the offender to public shame, the humiliation increasing in proportion to the extent of the publicity. And the geographic reach of the Internet is greater than anything which could have been designed in colonial times. These facts do not render Internet notification punitive. The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation.
The State's Web site does not provide the public with means to shame the offender by, say, posting comments underneath his record. An individual seeking the information must take the initial step of going to the Department of Public Safety's Web site, proceed to the sex offender registry, and then look up the desired information. The process is more analogous to a visit to an official archive of criminal records than it is to a scheme forcing an offender to appear in public with some visible badge of past criminality. The Internet makes the document search more efficient, cost effective, and convenient for Alaska's citizenry.
[Id. at 98-99, 123 S.Ct. at 1150-51, 155 L.Ed.2d at 180-81.]
Speaking through Justice Kennedy, the Court further stated:
The Ninth Circuit highlighted that the information was available "world-wide" and "broadcas[t]" in an indiscriminate manner. As we have explained, however, the [Internet] notification system is a passive one: An individual must seek access to the information. The Web site warns that the use of displayed information "to commit a criminal act against another person is subject to criminal prosecution." Given the general mobility of our population, for Alaska to make its registry system available and easily accessible throughout the State was not so excessive a regulatory requirement as to become a punishment.
The excessiveness inquiry of our ex post facto jurisprudence is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective. The Act meets this standard.
[Id. at 104-05, 123 S.Ct. at 1153-54, 155 L.Ed.2d at 184-85 (internal citations omitted).][8]
*461 On the same day Smith v. Doe, supra, was decided, the Supreme Court also upheld the constitutionality of Connecticut's Internet sex offender registry. The Court held that the Connecticut statute, which posted sex offender information based solely upon offenders' past convictions, did not violate offenders' procedural due process rights. There was no procedural due process requirement that, in order to post sex offender information, the state provide a hearing and establish that the offender is currently dangerous. Conn. Dept. of Pub. Safety v. Doe, 538 U.S. 1, 4-8, 123 S.Ct. 1160, 1162-65, 155 L.Ed.2d 98, 102-05 (2003).[9]
The critical issue before us, therefore, is whether Paragraph 12 violates the Equal Protection Clause of the Fourteenth Amendment. Significantly, the equal protection argument was not resolved in plaintiffs' prior federal litigation, A.A., supra, 341 F.3d 206, and equal protection arguments were not raised in Smith v. Doe, supra, or Conn. Dept. of Pub. Safety v. Doe, supra.
Plaintiffs insist that a state cannot discriminate against sex offenders and that there is no ability to provide in a constitution for different treatment of sex offenders than any other group of criminals. While we have some sympathy for the arguments that access or availability of the information should be limited geographically or otherwise, we must reject the contention because our function is only to determine constitutionality, not to evaluate or decide public policy.
We emphasize, as has the United States Supreme Court, that:
In this case, we are dealing not merely with government action, but with a state constitutional provision approved by the people ... as a whole. This constitutional provision reflects both the considered judgment of the state legislature that proposed it and that of the citizens... who voted for it. "[W]e will not overturn such a[law] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [people's] actions were irrational."
[Gregory v. Ashcroft, 501 U.S. 452, 471, 111 S.Ct. 2395, 2406, 115 L.Ed.2d 410, 430 (1991) (internal citations omitted).]
See also State v. Muhammad, 145 N.J. 23, 41-44, 678 A.2d 164 (1996) (upholding victim impact statute, N.J.S.A. 2C:11-3c(6), in light of the Victim Rights Amendment embodied in N.J. Const. art I, ¶ 22).
The Fourteenth Amendment to the Federal Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, ¶ 1. The equal protection clause does not preclude the use of classifications. It requires only that classifications not be arbitrary. Doe v. Poritz, supra, 142 N.J. at 91, 662 A.2d 367. In other words, the Constitution does not require things that are different in fact to be treated in law as though they were the same. Moreover,
[t]he initial discretion to determine what is "different" and what is "the same" resides in the legislatures of the States. A legislature must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill.

*462 [Plyler v. Doe, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786, 798-99 (1982).]
The level of scrutiny applied to legislation challenged on equal protection grounds depends on the nature of the classification at issue. If a legislative classification does not burden a fundamental right or target a suspect class, it will be upheld so long as it bears a rational relation to a legitimate government interest. Romer v. Evans, 517 U.S. 620, 631, 116 S.Ct. 1620, 1627, 134 L. Ed.2d 855, 865 (1996); Doe v. Poritz, supra, 142 N.J. at 92, 662 A.2d 367.
The rational basis test applies in this case since sex offenders are not a suspect class. Doe v. Moore, 410 F.3d 1337, 1342-48 (11th Cir.2005) (finding under the "rational basis" test no equal protection violation with respect to Florida's sex offender registration-notification law); Cutshall v. Sundquist, 193 F.3d 466, 482-83 (6th Cir.1999) (Tennessee Registration and Monitoring Act "subject to scrutiny under rational basis test" and does not violate equal protection), cert. denied, 529 U.S. 1053, 120 S.Ct. 1554, 146 L.Ed.2d 460 (2000); Artway, supra, 81 F.3d at 1267 (requirement that "compulsive and repetitive" sex offenders register under original Megan's Law did not violate equal protection); Doe v. Poritz, supra, 142 N.J. at 92-93, 662 A.2d 367; State v. Wingler, 25 N.J. 161, 174-76, 135 A.2d 468 (1957) (separate classification and treatment of sex offenders has a rational basis and is constitutional).
In fact, the United States Supreme Court has stated that "the equal protection clause does not prohibit the legislature from recognizing `degrees of evil'" and differentiating between crimes or offenders, Skinner v. Oklahoma, 316 U.S. 535, 540, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655, 1659-60 (1942), and our Supreme Court has stated, in upholding Megan's Law, that "[i]t is well settled that classifying offenders according to the offense committed is subjected to rational basis analysis." Doe v. Poritz, supra, 142 N.J. at 92, 662 A.2d 367. Furthermore, in Smith v. Doe, supra, 538 U.S. at 103, 123 S.Ct. at 1153, 155 L.Ed.2d at 184, the United States Supreme Court quoted authority relating to the high rate of recidivism among sex offenders and the possibility of re-offending at long intervals thereby demonstrating a rational basis for treating them differently from other offenders.
A classification involving neither fundamental rights nor a suspect class is accorded a strong presumption of validity. The rational basis test "`is not a license for courts to judge the wisdom, fairness, or logic of legislative choices,'" and it does not empower the judiciary to act as a super-legislature, judging the wisdom or desirability of legislative policy. Heller v. Doe, 509 U.S. 312, 319, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257, 270 (1993) (quoting FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211, 221 (1993)).
At argument before us, plaintiffs relied principally on Romer v. Evans, supra, 517 U.S. at 631-36, 116 S.Ct. at 1627-29, 134 L.Ed.2d at 865-68, to support their equal protection argument. In Romer, supra, the Supreme Court declared unconstitutional an amendment to the Colorado constitution that prohibited all legislative, executive, or judicial action at any level of state or local government designed to protect gays and lesbians. The Court found the constitutional amendment offensive to equal protection because it identified persons by "a single trait," homosexuality, and denied them the right to seek "specific protection from the law"  a result the Court found "unprecedented in our jurisprudence." *463 Id. at 633, 116 S.Ct. at 1628, 134 L.Ed.2d at 866. Essentially, the Court found that there was no "rational relationship to legitimate state interests" served by the constitutional amendment, id. at 632, 116 S.Ct. at 1627, 134 L.Ed.2d at 866, because there is no "legitimate government interest" to "harm a politically unpopular group." Id. at 634, 116 S.Ct. at 1628, 134 L.Ed.2d at 867. See also Citizens for Equal Protection v. Attorney General, 368 F.Supp.2d 980 (D.Neb.2005) (Nebraska's constitutional amendment prohibiting same-sex marriages violated Federal Constitution because of broad disability on single group based on their status).
The classification in Romer, supra, however, was based on an individual's sexual orientation, not on conduct evidenced by his or her criminal wrongdoing. States are permitted to make classifications based on conduct in order to further a legitimate interest in protecting their citizens. See, e.g., Smith v. Doe, supra; Conn. Dept. of Pub. Safety v. Doe, supra, (both rejecting challenges to Megan's Law postings because of the fact the subjects were convicted sex offenders); Able v. United States, 155 F.3d 628, 632 (2d Cir.1998) ("The suspect or quasi-suspect classes that are entitled to heightened scrutiny have been limited to groups generally defined by their status ... and not by the conduct in which they engage").[10]
The New Jersey voters' adoption of Paragraph 12 was premised on the view that widespread notification offers a means by which members of the general public may protect themselves from the risk of recidivism by the more dangerous sex offenders. Significantly, that view is shared by the legislatures of other states as well as the United States Congress. See 42 U.S.C. § 14071 (statute making receipt of certain federal funds contingent upon states' implementation of sex offender registration and community notification programs); Smith v. Doe, supra, 538 U.S. at 89, 123 S.Ct. at 1145, 155 L.Ed.2d at 174 (noting that, by 1996, every state, the District of Columbia, and the federal government had enacted some variation of Megan's Law). See also McKune v. Lile, 536 U.S. 24, 32-33, 122 S.Ct. 2017, 2024, 153 L.Ed.2d 47, 56 (2002) (noting that "[s]ex offenders are a serious threat in this Nation" and "[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault").
Thus, Paragraph 12 serves a legitimate state interest in public safety and does not irrationally target an unpopular group. It is not unprecedented for the government to, by constitutional amendment or statute, limit the constitutional rights of convicted criminals, or to subordinate the constitutional rights of convicted criminals to the safety rights of the general public. For example, both the Federal and State Constitutions authorize the disenfranchisement of convicted criminals. U.S. Const. amend. XIV, § 2; N.J. Const. art. II, § 1, ¶ 7; N.J. State Conf. NAACP v. Harvey, 381 N.J.Super. 155, 885 A.2d 445 (App.Div.2005). Similarly, convicted criminals may lawfully be deprived of the right to bear arms. See United States v. Everist, 368 F.3d 517, 519 *464 (5th Cir.2004); Burton v. Sills, 53 N.J. 86, 95-101, 248 A.2d 521 (1968), appeal dismissed, 394 U.S. 812, 89 S.Ct. 1486, 22 L.Ed.2d 748 (1969).
Paragraph 12 withstands scrutiny under the Equal Protection Clause. It merely authorizes the Legislature to pass legislation that allows the disclosure to the general public of specified information regarding convicted sex offenders. In Doe v. Poritz, supra, 142 N.J. at 91-95, 662 A.2d 367, the Court held that the registration and community notification provisions of Megan's Law did not violate the equal protection clause of either the Federal or State Constitutions. The Court stated that "[t]he Legislature has determined that convicted sex offenders represent a risk to the public safety and that knowledge of their identities and whereabouts is necessary for protection of the public." Id. at 93, 662 A.2d 367. Therefore, the Legislature's decision to subject sex offenders to registration and community notification was rationally related to a legitimate government purpose. Id. at 91-95, 662 A.2d 367. As an intermediate appellate court we decline to disturb that holding merely because Megan's Law disclosures are now on the Internet.
We hold that the State has a rational and legitimate basis for allowing citizens to be aware of and to protect their children from sex offenders, and uphold the constitutionality of Paragraph 12 under the federal Equal Protection clause.
We emphasize, however, that because Paragraph 12 authorizes the Legislature to adopt legislation relating to the disclosure of specified sex offender information, and also leaves the Legislature to determine the scope, manner and format of "the disclosure," it is appropriate to evaluate the constitutional challenge in light of the present statutory scheme embodied in the Internet Registry Act. Under the present statute, Internet posting is permitted only for Tier Three and some Tier Two offenders, see N.J.S.A. 2C:7-13(b)-(f), and the offenders continue to have the right, developed under case law,[11] to challenge their relevant tier classification for purposes of notification. Pursuant to N.J.S.A. 2C:7-13(d), offenders classified as having a moderate risk of recidivism and subject to notification under N.J.S.A. 2C:7-8(c)(2), may be excepted from the posting if convicted of certain offenses, are related, or stand in loco parentis, to the victim or the crime arose from a consensual relationship. N.J.S.A. 2C:7-13g details the information which is to be posted and "made publicly available on the Internet."
Plaintiffs express concerns that Megan's Law can be amended to expand Internet posting in light of the broad language of Paragraph 12 or possibly go beyond the Internet, as the paragraph is not limited to the Internet. At this stage, however, we cannot consider a facial challenge to Paragraph 12 under the Federal Constitution, or invalidate it, "based on a worst-case analysis that may never occur[,]" Ohio v. Akron Center for Reproductive Health, 497 U.S. 502, 514, 110 S.Ct. 2972, 2981, 111 L.Ed.2d 405, 420 (1990), especially when the present statutory complex poses no federal constitutional concern. See N.J.S.A. 2C:7-12 to -19; and the implementing Attorney General Guidelines, http://www.njcdj.org (last visited Feb. 14, 2006).
We also find no federal cognizable right to privacy violated by Paragraph 12. Indeed, the Third Circuit has already held, *465 albeit for purposes of injunctive relief, that the dissemination of the information referenced in Paragraph 12 does not violate any constitutional right to privacy. A.A., supra, 341 F.3d at 210-14; see also Paul P. II, supra, 227 F.3d at 105-07; Paul P. I, supra, 170 F.3d at 404-06; Doe v. Poritz, supra, 142 N.J. at 77-91, 662 A.2d 367. Moreover, as we have already developed, the United States Supreme Court has upheld the constitutionality of Internet sex offender registries under the Federal Constitution, concluding that Internet notification is not punishment for ex post facto purposes. Smith v. Doe, supra, 538 U.S. at 89-91, 123 S.Ct. at 1145-46, 155 L.Ed.2d at 174-76. See also Conn. Dept. of Pub. Safety v. Doe, supra, 538 U.S. at 4-8, 123 S.Ct. at 1162-65, 155 L. Ed.2d at 102-05.
Finally, plaintiffs acknowledge that their challenge to the Internet Registry Law under the ex post facto, double jeopardy and privacy provisions of the New Jersey Constitution must fail if Paragraph 12 is constitutional.

III.
Our concurring colleague would avoid consideration of the constitutionality of Paragraph 12 by concluding that the Act is constitutional under the New Jersey Constitution as it stood before the amendment. We are not so sure of that conclusion, given the scope of the Act and accessibility of information on the Internet, including the tier two cases not excepted by N.J.S.A. 2C:7-13. In any event, we see no reason, as a matter of sound judicial philosophy, to avoid deciding the constitutional issue presented to us by deciding other constitutional issues by reference to constitutional provisions which no longer control the question.
The judgment is affirmed.
FISHER, J.A.D., concurring.

I
Article IV, Section 7, Paragraph 12 (hereafter Paragraph 12) of the New Jersey Constitution enables the Legislature to "authorize by law the disclosure to the general public of information pertaining to the identity, specific and general whereabouts, physical characteristics and criminal history of persons found to have committed a sex offense." This constitutional amendment also purports to preclude any state constitutional challenge by declaring that any legislation so enacted will be considered lawful "[n]otwithstanding any other provision of this constitution and irrespective of any right or interest in maintaining confidentiality."
Paragraph 12 was adopted by the people of this State at the 2000 general election. On July 23, 2001, the Legislature enacted the Sex Offender Internet Registry Act (Internet Registry Act), N.J.S.A. 2C:7-12 to -19. Soon thereafter, plaintiffs filed a complaint in federal court seeking invalidation of the Internet Registry Act. The district court denied plaintiffs' motion for a preliminary injunction except that the court determined that the registry must exclude certain information regarding plaintiffs' whereabouts. A.A. v. New Jersey, 176 F.Supp.2d 274 (D.N.J.2001). The court of appeals held that plaintiffs were not entitled to interlocutory injunctive relief and directed, on remand, that the relief previously granted to plaintiffs be vacated. A.A. v. New Jersey, 341 F.3d 206 (3rd Cir.2003). Later, the district court granted plaintiffs' motion for a voluntary dismissal.
On January 2, 2004, plaintiffs filed a complaint in the Law Division, contending that the Internet Registry Act violates various federal and state constitutional provisions. And, because Paragraph 12 *466 purports to shield the Internet Registry Act from state constitutional attack, plaintiffs also asserted in their complaint that Paragraph 12 violates the federal equal protection clause. The trial judge granted the motion to dismiss and plaintiffs appealed.
In affirming the dismissal of plaintiffs' complaint, my colleagues have concluded (1) that the Internet Registry Act does not violate the federal ex post facto[12] and double jeopardy[13] clauses; (2) that Paragraph 12 "trumps" all the state constitutional arguments marshaled by plaintiffs in their attack on the Internet Registry Act; and (3) that Paragraph 12 does not violate the federal equal protection clause.[14] I agree that we are constrained to conclude that plaintiffs' federal ex post facto and double jeopardy arguments are without merit and that Paragraph 12, if valid, "trumps" all plaintiffs' state constitutional contentions, but I respectfully disagree that it is necessary that we consider whether Paragraph 12 violates the federal equal protection clause.
First, like the majority, I agree that the Supreme Court of the United States has determined that internet registry acts like that enacted by our Legislature do not violate the federal ex post facto and double jeopardy clauses. See Smith v. Doe, 538 U.S. 84, 89-91, 123 S.Ct. 1140, 1145-46, 155 L. Ed.2d 164, 174-76 (2003); Conn. Dep't of Pub. Safety v. Doe, 538 U.S. 1, 4-8, 123 S.Ct. 1160, 1162-65, 155 L.Ed.2d 98, 102-05 (2003). Since we are bound by those rulings, I agree there is no merit to plaintiffs' federal constitutional attacks on the Internet Registry Act and that we are obligated to affirm the dismissal of those portions of plaintiffs' complaint.
Second, I agree that the only fair interpretation of Paragraph 12 is that its purpose and intent is to disable all the state constitutional rights possessed by sex offenders insofar as they may apply to any notification laws that our Legislature may enact.
And third, although I do not agree with my colleagues' disposition of plaintiffs' federal equal protection argument, I nevertheless join in affirming the judgment of the trial court because I believe such a ruling is not necessary to our disposition of this appeal. That is, rather than consider whether Paragraph 12 passes federal equal protection muster, I believe we should first determine whether there is merit to the state constitutional arguments posed by plaintiffs in their attack on the Internet Registry Act, which Paragraph 12 was designed to bar. Since I believe the jurisprudence developed in Doe v. Poritz, 142 N.J. 1, 662 A.2d 367 (1995), to which we are bound, requires our acknowledgement that the Internet Registry Act does not violate state constitutional ex post facto,[15] double jeopardy[16] and privacy[17] rights, I would not reach the issue posed in the opening sentence of the majority opinion. I offer the following in further explanation of my views.

II
Paragraph 12 was adopted to alleviate the concerns harbored by the Legislature that the judicial branch might find a state constitutional basis for invalidating in *467 whole or in part an internet registry act.[18] Its opening phrase ("Notwithstanding any other provision of this constitution and irrespective of any right or interest in maintaining confidentiality") unmistakably reveals the legislative intent, and the intent of the people who embraced it at the 2000 general election, to have Paragraph 12 act as a deus ex machina to rescue all parts of the Internet Registry Act from state constitutional attack.
In considering the issues presented in this appeal, my colleagues have concluded that we must first consider the constitutional validity of Paragraph 12 and only upon its failure to pass constitutional muster should we consider the state constitutional arguments asserted by plaintiffs in their attack on the Internet Registry Act. I respectfully disagree with my colleagues' approach because I do not find any state constitutional infirmity in the Internet Registry Act that requires the application of the rights-stripping provision of Paragraph 12. See Donadio v. Cunningham, 58 N.J. 309, 325-26, 277 A.2d 375 (1971) ("[A] court should not reach and determine a constitutional issue unless absolutely imperative in the disposition of the litigation."). See also In the Matter of N.J. Amer. Water Co., 169 N.J. 181, 197, 777 A.2d 46 (2001); O'Keefe v. Passaic Valley Water Comm'n, 132 N.J. 234, 240, 624 A.2d 578 (1993); Green Township Educ. Ass'n v. Rowe, 328 N.J.Super. 525, 531, 746 A.2d 499 (App.Div.2000).
The controversy regarding Paragraph 12's constitutionality is relevant only to the extent that this constitutional amendment potentially serves to eradicate plaintiffs' right to assert state constitutional rights in attacking the validity of the Internet Registry Act, or any future legislation falling within its scope. I believe plaintiffs' state constitutional claims lack substance and, because they lack substance, I would conclude it is unnecessary that we consider the more momentous question of whether the people of New Jersey could amend their constitution to deprive, in this context, a class of citizens of all state constitutional rights without running afoul of the federal equal protection clause. Only when, if ever, the Legislature enacts laws that would infringe plaintiffs' pre-existing state constitutional rights should we consider whether Paragraph 12 violates the federal equal protection clause.
Plaintiffs' state constitutional claims are, in essence, based upon their argument that the Internet Registry Act makes available personal information, including their present whereabouts, to an audience far greater than necessary to meet the objectives of this legislation. As a result of the enormous *468 class of persons now able to learn of their whereabouts, plaintiffs assert that the intent of the Internet Registry Act, as well as its likely consequences, is to render them outlaws, to deprive them of all rights, and, in essence, requires that they wear an electronic scarlet letter, expressive of their past crimes and visible to anyone in the world with internet access and the desire to look. Since this court is governed by existing jurisprudence on these points, I believe we are bound to recognize that, notwithstanding plaintiffs' forceful arguments, their state constitutional ex post facto, double jeopardy and right of privacy claims are without merit.

A. The Ex Post Facto and Double Jeopardy Claims
I agree with plaintiffs that the broad availability of information authorized by the Internet Registry Act suggests that the stigma imposed is not just regulatory but instead represents a punitive consequence prohibited by the ex post facto clause. However, by the same token, I am obligated to recognize that we are not writing on a blank slate. In Doe v. Poritz, supra, 142 N.J. at 42-43, 662 A.2d 367, the Court held that our interpretation of the state constitutional ex post facto clause must follow the manner in which the federal ex post facto clause is interpreted. See also State v. Muhammad, 145 N.J. 23, 56-57, 678 A.2d 164 (1996); Auge v. N.J. Dep't of Corrections, 327 N.J.Super. 256, 263, 743 A.2d 315 (App.Div.), certif. denied, 164 N.J. 559, 753 A.2d 1152 (2000). Since the Supreme Court of the United States determined that Alaska's similar internet registry act did not violate the federal ex post facto clause, Smith v. Doe, supra, 538 U.S. at 105-06, 123 S.Ct. at 1154, 155 L.Ed.2d at 185, it necessarily follows that we should also construe the state constitutional ex post facto clause in the same way.
It also follows, for essentially the same reasons, that plaintiffs' state double jeopardy argument must fall, since this clause applies only to criminal punishment and not civil regulation. See, e.g., Hudson v. United States, 522 U.S. 93, 98-99, 118 S.Ct. 488, 493, 139 L. Ed.2d 450, 458-59 (1997); Doe v. Poritz, supra, 142 N.J. at 70-71, 662 A.2d 367. As in the ex post facto context, our courts have concluded that the protections afforded by the state double jeopardy clause are co-extensive with those provided by the federal double jeopardy clause. See State v. Widmaier, 157 N.J. 475, 490, 724 A.2d 241 (1999); Auge, supra, 327 N.J.Super. at 263, 743 A.2d 315.

B. The Right of Privacy Claims
I would conclude that Doe v. Poritz requires that we reject plaintiff's right of privacy claim. Although the right of privacy has many strands, plaintiffs' privacy claim chiefly rests upon the contention that the Internet Registry Act violates their right to be free from the State's disclosure of private facts about them.
In considering the extent of the federal constitutional right of privacy in this regard, our Supreme Court has recognized that the information which could be disseminated through application of the then-existing registration laws was "readily available to the public" and thus not within "the ambit of constitutional protection." Doe v. Poritz, supra, 142 N.J. at 79, 662 A.2d 367. See also Doe v. City of New York, 15 F.3d 264, 268 (2d Cir.1994) ("[A]n individual cannot expect to have a constitutionally protected privacy interest in matters of public record."). The very information that is disseminated on the Internet regarding these plaintiffs was recognized by the Court as being available to the public in other locations. Doe v. Poritz, supra, 142 N.J. at 79-81, 662 A.2d 367. And, although the Court acknowledged that constitutional privacy protection may *469 be afforded to available information when transformed from "scattered . . . bits of information" into a "compilation of otherwise hard-to-obtain information," id. at 85-86, 662 A.2d 367 (quoting United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 764, 109 S.Ct. 1468, 1477, 103 L.Ed.2d 774, 790 (1989)), the Court held that the state interest in public disclosure of such information substantially outweighs plaintiffs' interest in privacy, explaining in part:
First, the information requested is not deserving of a particularly high degree of protection. We are not dealing with thoughts and feelings revealed in the course of psychiatric treatment, [citing Ms. B. v. Montgomery Cty. Emerg. Serv., Inc., 799 F.Supp. 534, 538 (E.D.Pa.1992) aff'd, 989 F.2d 488 (3rd Cir.), cert. denied, 510 U.S. 860, 114 S.Ct. 174, 126 L.Ed.2d 133 (1993)], medical information in general, [citing United States v. Westinghouse Elec. Corp., 638 F.2d 570, 577 (3rd Cir.1980)], or medical information regarding HIV status, Doe v. Borough of Barrington, 729 F.Supp. 376, 384 (D.N.J.1990). Plaintiff, therefore, can claim only a most limited expectation of privacy in the information to be disseminated. Second, because of the public nature of the information, we cannot speak of harm either from non-consensual disclosure or damage to the relationship in which the records were generated. We neither risk exposing intimate details of plaintiff's life, like those laid bare to a psychiatrist, nor do we risk damaging a relationship like that between patient and doctor by releasing plaintiff's name, address or description. See Ms. B., supra, 799 F.Supp. at 538.
Counterbalanced against plaintiff's diminished privacy interest is a strong state interest in public disclosure. There is an express public policy militating toward disclosure: the danger of recidivism posed by sex offenders. The state interest in protecting the safety of members of the public from sex offenders is clear and compelling.
[Doe v. Poritz, supra, 142 N.J. at 88-89, 662 A.2d 367.]
As a result, the Court concluded that the federal right of privacy did not provide a basis for setting aside any part of the registration and notification statutes then in question.
For similar reasons, the Court rejected the state constitutional privacy arguments, explaining that "the result of our balancing" for state constitutional purposes "is no different than that under the Federal Constitution," id. at 90, 662 A.2d 367, explaining:
We find that the state interest in protecting the public is legitimate and substantial. We find, more importantly, that the interest in disclosure substantially outweighs the interest in nondisclosure. Because none of the information disclosed under the Registration Law is confidential, requiring disclosure of such information results in a minimal invasion of privacy. Although the potential consequences of active dissemination under the Notification Law alter the privacy interests, the incursion on those interests is necessary for the protection of the public, as the means chosen are narrowly tailored to that interest.
[Id. at 90-91, 662 A.2d 367.]
The Court's linking of the scope of the state right of privacy to the means chosen for disclosure suggests the vulnerability of the Internet Registry Act to this state constitutional right. However, considering that the postings about plaintiffs on the internet represent passive collections of information also available elsewhere and serves, as observed in Smith v. Doe, to merely make such a document search *470 "more efficient, cost effective and convenient," 538 U.S. at 98-99, 123 S.Ct. at 1150-51, 155 L.Ed.2d at 180-81, I conclude that the Court's holding in Doe v. Poritz, when applied to these circumstances, requires that we recognize that internet availability of information obtainable elsewhere is as "narrowly tailored" as necessary when compared to the substantial public interest that is implicated and, thus, is not violative of our state constitutional right of privacy.

C. Summary
As a result, I would conclude that we need not determine whether Paragraph 12 passes federal equal protection muster, because this constitutional amendment is a device intended to bar the invalidation of any part of the Internet Registry Act on state constitutional grounds and is not triggered until an otherwise meritorious state constitutional argument is posed. Since I believe that our present jurisprudence does not permit a determination that the Internet Registry Act, as presently composed, violates any of the state constitutional guarantees asserted by plaintiffs, I disagree with my colleagues that it is necessary to determine the constitutionality of Paragraph 12. Instead, I would affirm the dismissal of the complaint by finding an absence of merit in the state constitutional arguments that Paragraph 12 was enacted to bar from the judiciary's scrutiny.

III
Although for reasons already expressed I would find it unnecessary to reach the issue, I respectfully disagree with my colleagues' determination that Paragraph 12 passes federal equal protection muster.
Like the state constitutional provision struck down by the Court in Romer v. Evans, 517 U.S. 620, 633, 116 S.Ct. 1620, 1628, 134 L.Ed.2d 855, 866 (1996), in my view Paragraph 12 "is at once too narrow and too broad" in that it "identifies persons by a single trait and then denies them protection across the board." In this sense, as Justice Kennedy said in speaking for the Court in Romer:
The resulting disqualification of a class of persons from the right to seek specific protection from the law is unprecedented in our jurisprudence. The absence of precedent for [such a state constitutional amendment] is itself instructive; "[d]iscriminations of an unusual character especially suggest careful consideration to determine whether they are obnoxious to the constitutional provision."
[Romer, supra, at 633, 116 S.Ct. at 1628, 134 L.Ed.2d at 866 (quoting Louisville Gas & Elec. Co. v. Coleman, 277 U.S. 32, 37-38, 48 S.Ct. 423, 425, 72 L.Ed. 770, 774 (1928)).]
Considering the unusual way in which Paragraph 12 seeks to insulate the Internet Registry Act from state constitutional scrutiny, and considering the narrow grouping of persons that Paragraph 12 purports to deprive of all state constitutional rights when asserted in this context, I would conclude that Romer compels a finding of Paragraph 12's unconstitutionality regardless of the fact that plaintiffs do not form a suspect class. Accord Plyler v. Doe, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (holding that a state statute denying public education to illegal aliens violated equal protection even though the Court explicitly denied that illegal aliens constituted a suspect class or that education was a fundamental right); City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (holding that a local zoning decision excluding group homes for the mentally retarded violated equal protection *471 even though the Court explicitly denied that the mentally retarded constituted a suspect class).
I agree with my colleagues that the Legislature may make reasoned choices in "establish[ing] classifications that roughly approximate the nature of the problem perceived." Plyler, supra, 457 U.S. at 216, 102 S.Ct. at 2394, 72 L.Ed.2d at 798-99. That analysis is applicable when examining whether the Internet Registry Act violates the equal protection clause. With regard to the Internet Registry Act, the Legislature is entitled to draw distinctions in this area and I would conclude  had the issue been presented  that the choices made by the Legislature in enacting the Internet Registry Act bear a rational relation to the legitimate government interest in question. Doe v. Poritz, supra, 142 N.J. at 92, 662 A.2d 367. It does not follow, however, that because the Internet Registry Act may comport with the command of equal protection that so does Paragraph 12.
Paragraph 12, in my view, represents a per se violation of the equal protection clause because it does much more  it creates an unprecedented gap in the fabric of our state constitution by depriving plaintiffs of all existing and potential legal protections. In Cruzan v. Director, Missouri Dep't of Health, 497 U.S. 261, 300, 110 S.Ct. 2841, 2863, 111 L.Ed.2d 224, 256 (1990) (concurring opinion), for example, Justice Scalia elegantly stated that "[o]ur salvation is the Equal Protection Clause, which requires the democratic majority to accept for themselves and their loved ones what they impose on you and me." If those sentiments remain true, then it follows that Paragraph 12 represents a glaring violation of the equal protection clause. Paragraph 12 violates the equal protection clause because it expressly purports to deprive only a small class of citizens of the protection of the state constitution for the impermissible purpose of insulating other legislation from judicial scrutiny by precluding the judiciary, when presented with a case or controversy, of determining whether particular legislation complies with the rights, contained in the state constitution, which were thought by our constitution's authors to be "natural and unalienable," N.J. Const. art. I, ¶ 1. If the issue was necessary for our determination, I would conclude that the State may not set apart a group of persons from the protection of all laws because those persons were convicted of certain crimes prior to the adoption of Paragraph 12. The command of equal protection must extend to all within the State regardless of what a person may have done or may be inclined to do. Although the Legislature was entitled to distinguish among persons in enacting the Internet Registry Act, and although I would conclude, had it been raised, that the Internet Registry Act does not violate the commands of equal protection, I part company with my colleagues because I do not believe the Legislature may withhold from any of its citizens the inestimable right to the protection of our laws in the fashion reflected by Paragraph 12.[19] In short, in my view, the Internet *472 Registry Act does possess a necessary link between its classification and objective, but Paragraph 12 was designed for the sole apparent purpose of disadvantaging a group of persons by depriving them of their state constitutional rights without "a rational relationship to an independent and legitimate legislative end." Romer, supra, 517 U.S. at 633, 116 S.Ct. at 1627, 134 L.Ed.2d at 866.

IV
For these reasons, I join with my colleagues in affirming the judgment entered in the trial court which dismissed plaintiffs' complaint.
NOTES
[1] Oral argument was recorded. Judge Fall listened to the tape and participated in the disposition of the appeal because a judge originally assigned to the matter was and remains unavailable due to medical reasons.
[2] Paragraph 12 was adopted at the general election of November 7, 2000, and became effective on December 7, 2000.
[3] The Internet Registry Act was adopted by L. 2001, c. 167, approved on July 23, 2001. Pursuant to R. 4:32-1, the matter before us was certified as a class action, with sub-classes of plaintiffs who committed sex offenses before and after Paragraph 12 was adopted, and before and after the Internet Registry Act was enacted. In dismissing the complaint "for failure to state a claim upon which relief can be granted," the order under review declared both Paragraph 12 and the Internet Registry Act to be constitutional. The Law Division also denied plaintiffs' cross-motion for summary judgment and injunctive relief.
[4] The complaint alleged that Paragraph 12 "violates plaintiff's rights to equal protection under the Fourteenth Amendment" (count one); "violates the Ex Post Facto clause of the United States Constitution" (count two) and "violates the Double Jeopardy clause of the United States Constitution" (count three). Premised thereon, the complaint further alleges that the Act "violates Article I, Section 1, Para[graph] 1 of the New Jersey Constitution," (court four), and "violates the Ex Post Facto clause of the New Jersey Constitution" (count five) and "violates the Double Jeopardy clause of the New Jersey Constitution" (count six). Counts one and four would also apply to offenses occurring after the effective dates of Paragraph 12 and the Act, respectively.
[5] The Registration Law, N.J.S.A. 2C:7-1 to -5, and the Community Notification Law, N.J.S.A. 2C:7-6 to -11, are collectively called "Megan's Law" as their adoption followed the death of seven-year-old Megan Kanka who was killed by a convicted sex offender. See State v. Timmendequas, 161 N.J. 515, 682, 737 A.2d 55 (1999).
[6] Justice Stein dissented because the law, in his view, constituted ex post facto punishment. Id. at 113-14, 147.
[7] At the time, the Attorney General's guidelines limited registration to prior convicted offenders who were classified as "repetitive and compulsive" sex offenders and newly convicted sex offenders. Doe v. Poritz, supra, 142 N.J. at 20, 662 A.2d 367.
[8] In Smith v. Doe, supra, the State conceded that the statute might have a deterrent impact, and the Court agreed that "governmental programs might deter crime without imposing punishment." Id. at 102, 123 S.Ct. at 1152, 155 L.Ed.2d at 183. Referring to recent studies, the Court stated that "Alaska could conclude that a conviction for a sex offense provides evidence of a substantial risk of recidivism." Id. at 103, 123 S.Ct. at 1153, 155 L.Ed.2d at 184.
[9] The Court expressly noted it was not addressing any substantive due process claim. Id. at 8, 123 S.Ct. 1160. See also concurring opinions of Justices Scalia and Souter.
[10] Unlike City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 105 S.Ct. 3249, 87 L. Ed.2d 313 (1985) involving mentally retarded citizens, and Plyler v. Doe, 457 U.S. 202, 226, 102 S.Ct. 2382, 72 L.Ed.2d 786, 805 (1982), reh'g denied, 458 U.S. 1131, 103 S.Ct. 14, 73 L.Ed.2d 1401 (1982), involving the education of the children of undocumented aliens, the rational basis for the classification in this case is premised on the illegal conduct of sex offenders themselves, and not merely on their status.
[11] The amendment to our State constitution cannot affect the decisions of the federal courts under the federal constitution.
[12] U.S. Const., Art. I, § 10.
[13] U.S. Const., Amend. V.
[14] U.S. Const., Amend. XIV, ¶ 1.
[15] N.J. Const., Art. IV, § 7, ¶ 3.
[16] N.J. Const., Art. I, ¶ 11.
[17] N.J. Const., Art. I, ¶ 1.
[18] At a public hearing on June 1, 2000, a sponsor of the bill explained that the proposed constitutional amendment was a reaction to opinions expressed by certain members of the United States Court of Appeals for the Third Circuit and the Supreme Court of New Jersey:

What we are looking to do with this constitutional amendment is to see that, once and for all, the public's right to have knowledge about sexual predators is actually provided and that there is constitutional backing to allow such disclosure.
Many of us, myself included, believe that, under both the New Jersey Constitution as well as the U.S. Constitution, notwithstanding the provisions of the 14th Amendment, that this right exists today. And nevertheless, given that there are those in the 3rd Circuit, as well as perhaps on our Supreme Court, who feel differently, we want to make sure that there is no ambiguity as to the intent of this Legislature, and hopefully the administration, in terms of seeing that this information is information which rightly should be broadly disseminated.
[Transcript of Public Hearing before the Assembly Law and Public Safety Committee regarding Assemb. Con. Res. No. 1, pp. 1-2, http://www.njleg.state.nj.us/legislativepub/pubhear/060100gg.htm (last visited March 7, 2006).]
[19] The majority recognizes that the Internet Registry Act presently permits internet posting of only tier three and some tier two offenders, and that offenders continue to have the right to challenge their relevant tier classification for purposes of notification. In Doe v. Poritz, supra, 142 N.J. at 29-30, 662 A.2d 367, the Court held that the providing of community notification pursuant to prior enactments, including the tier classification which affected the scope of notification, must be subject to judicial review prior to notification because of the requirements of procedural due process and fundamental fairness. Since the state constitutional rights that drove this determination in Doe v. Poritz may no longer be asserted  now that this court has upheld Paragraph 12  it follows that the procedural requirements presently in place continue to exist only through the grace of the Legislature and whatever protection the federal constitution may provide.